CONTINENTAL SOUTHERN LINES,
INC., Petitioner,

v.

Ruth HILLAND et vir., Respondents.

No. B–5004.

Supreme Court of Texas.

Oct. 8, 1975.

Weitinger, Steelhammer & Tucker, Don A. Weitinger and Robert H. Steelhammer, Houston, for petitioner.

Jamail & Gano, Robert F. Stein, Houston, for respondents.

GREENHILL, Chief Justice.

Ruth Hilland, a passenger, was injured in Louisiana when she was getting off of a bus marked *Continental Trailways*. "Continental Trailways" is but a trade name used by a number of separate bus corporations as indicated below. The bus from which the plaintiff stepped was owned and operated by *Continental Southern Lines, Inc.* Suit was brought within two years by Ruth Hilland against *Continental Trailways, Inc.*, a Texas corporation. The defendant *Continental Trailways, Inc.*, is a different corporation with different officers and directors from *Continental Southern Lines, Inc.*, a Louisiana corporation which had its headquarters in Jackson, Mississippi. More than two years after the accident, the plaintiffs' petition was amended to make *Continental Southern* a party defendant. It interposed the two year statute of limitations.[1]

The trial court overruled the plea of limitations; and after a jury trial, judgment was rendered for the plaintiff against *Continental Southern* for approximately $7,800. The Court of Civil Appeals affirmed. 516 S.W.2d 279. We reverse on the limitations question, but we remand the cause to the district court for a new trial in the interest of justice.

■ The general rule in tort cases, under the limitation statute, is that a suit must be "commenced and prosecuted" against a party to be held liable within two years from the date of the act which causes the injury. And generally, the institution of suit against one corporation will not interrupt the running of the limitation period as to a different corporation or entity. *Stokes v. Beaumont, Sour Lake & Western Ry.,* 161 Tex. 240, 339 S.W.2d 877 (Tex.1960); 51 Am.Jur.2d 805, Limitation of Actions § 294.

The evidence in this regard is this: The plaintiff purchased in Houston a round-trip bus ticket on "Continental Trailways." The bus station and the bus were marked in large letters "Continental Trailways."[2] The bus had printed on its side, near its rear, in one inch letters, the information required by the Interstate Commerce Commission,—that the bus was owned by Continental Southern Lines, Inc. The plaintiff apparently did not see this. She considered that she was just traveling on "Continental Trailways" [not *Continental Trailways, Inc.*, against whom suit was brought].

The ticket which she purchased stated on it that it was issued by some 26 bus lines, listed in alphabetical order, beginning with American Bus Lines, Inc., and including the name of Continental Southern Lines, Inc., "all doing business as Continental Trailways, Dallas, Texas."

The corporation first sued, Continental Trailways, Inc., was not one of the 26 corporations listed on the ticket sold to the plaintiff. At times relevant here, it had no equipment, busses, or terminals. It transported no passengers. Its sole purpose was to preserve the trade name, "Continental Trailways." The record is silent as to the ownership of Continental Trailways, Inc., and Continental Southern Lines, Inc. There is no evidence that there is a parent

---

1. Article 5526, Vernon's Texas Civil Statutes Annotated. All emphasis herein is added.

2. The bus station was owned and operated by yet another corporation, Trans-Continental Bus System, Inc. Out of that terminal four bus lines operate: Continental Bus System, Inc., which operates "up as far as Denver, Colorado"; Continental Southern Lines, Inc.; Midwest Bus Lines, Inc.; and at the

time of trial in 1974, Continental Trailways, Inc. The latter was changed from a Texas corporation to a Delaware corporation in about 1973 and began to operate busses to Houston, Corpus Christi and San Antonio. The defendant Continental Southern Lines, Inc., operates in Louisiana, Mississippi, Alabama, and Arkansas, and "comes as far west as Houston, Texas."

corporation owning or controlling the two corporations, or any of the corporations. Each of the 26 or 27 corporations was a separate entity with separate officers and directors.

The testimony is that "Continental Trailways" is a trade name for an association of bus lines for advertising purposes. The evidence is that "any bus line that will qualify and meet the requirements can belong to the national Trailways System . . . ." Asked why Continental Trailways operated under so many corporate names, the Houston division superintendent, Mr. Hooker, testified, "Well, the Interstate Commerce Commission has required us to keep separate corporations for legal purposes, . . I know they are . . . required to operate them as separate corporations. They have a separate board of directors and separate officers that make up individual corporate income tax records, it always operates separately." The witness knew of no interlocking agreements.

The line owning and operating the bus from which plaintiff was injured had been the Southern Bus Lines, Inc.; and, according to the witness Hooker, "then, when it got into a Continental picture, it became Continental Southern Lines, Inc." It operated thereafter under the trade name "Continental Trailways."

The Court of Civil Appeals apparently recognized that there was not proof in the record to establish that Continental Southern Lines, Inc., and Continental Trailways, Inc., were the same or jointly owned entities, and that before the amendment to Rule 28, Texas Rules of Civil Procedure, instituting suit against Continental Trailways, Inc., would not, absent some exception or other reason, toll the statute of limitations against Continental Southern Lines. Its decision is based squarely upon the amendment to Rule 28.

Rule 28 formerly provided that an individual, partnership or *unincorporated* association could sue or be sued in an assumed name. The rule was amended to provide that

Any partnership, unincorporated association, *private corporation,* or individual doing business under an assumed name *may sue or be sued in its* partnership, *assumed or common name* for the purpose of enforcing for or against it a substantive right, *but on a motion by any party or on the court's own motion the true name may be substituted.*

The suit was not brought against an entity in its assumed or trade name, "Continental Trailways." It was brought against a Texas corporation, Continental Trailways, Inc., upon which service was had. Service was not had upon Continental Southern Lines, Inc. Furthermore, the amendment to Rule 28 did not become effective until January 1, 1971. The accident occurred in March of 1968; and the two year period of limitation would have run in March of 1970,—before the effective date of the amendment of the rule in 1971. If the limitation period had run, the amendment of the rule could not remove the bar of the statute of limitation. *Cathey v. Weaver,* 111 Tex. 515, 242 S.W. 447 (1922). We must, therefore, reverse the judgments below.

This brings us to the judgment to be entered. Having found error in the judgment below, this Court, in a proper case, may remand the cause for a new trial in the interest of justice. *Scott v. Liebman,* 404 S.W.2d 288 (Tex.1966). We consider this to be such a case.

While there is no evidence here that the bus companies involved set about to deprive anyone of his or her rights, it is apparent that they have made a conscious effort to make it appear to the public and to their customers that they are "Continental Trailways." There is evidence that the corporations have the same agent for service; and it developed on the oral argument that they use the same attorneys in this area, at least in Houston. There was also some indication on oral argument that the service of cita-

tion may have actually been forwarded to Continental Southern Lines, Inc., but there was no indication as to when this may have occurred. The driver of the bus from which plaintiff fell, soon after the accident, filled out a report of the accident and sent it to his home office, the office of the "real defendant," Continental Southern Lines, Inc. From the above it might be inferred that its people became alerted and that its investigative people had prompt notice of the accident. Upon a retrial, the plaintiff will also have the opportunity to prove, if she can, that with knowledge of the facts of the accident, *Continental Southern Lines, Inc.,* caused an answer to be filed by *Continental Trailways, Inc.,* or acquiesced in such action. The record, however, was not fully developed; and there are only inferences, but no finding, that Continental Southern Lines, Inc., was actually notified and had a fair opportunity to defend itself before the period of limitations had run.

■ The primary purpose of a statute of limitations is to compel the exercise of a right within a reasonable time so that the opposite party has a fair opportunity to defend while witnesses are available and the evidence is fresh in their minds. While the plaintiff made a mistake in her original petition as to the defendant that should have been sued, it is our opinion that she should be given, under the circumstances here present, an opportunity to prove that the Continental Southern Lines, Inc., was cognizant of the facts, was not misled, or placed at a disadvantage in obtaining relevant evidence to defend the suit. *Price v. Anderson,* 522 S.W.2d 690 (Tex.1975); *Hallaway v. Thompson,* 148 Tex. 471, 226 S.W.2d 816 (1950). See also *Gentry v. Credit Plan Corporation of Houston,* Tex., 528 S.W.2d 571, announced by this Court on September 24, 1975, where dispositive facts *were* put in evidence.

If the substance of the facts set out above are found upon a new trial, it would be a misapplication of the statute of limitations to hold that the plaintiff's action was barred. Continental Southern would then have known or should have known that it would be the target if plaintiffs ever learned the new facts, and it had as much opportunity to prepare a defense as if it had been named a defendant in the original petition.

The judgments of the courts below are reversed and the cause is remanded to the district court for a new trial.