Mary Jean PARKER, Individually and as Representative of the Estate of Billy Joe Parker, Deceased, and as Next Friend of Daniel Edward Parker and Brandon Curtis Parker, Minors; Daniel Allen Parker and Betty Jo Parker; Jenie Watson Hamilton, Individually and as Representative of the Estate of Preston Watson, Deceased; Preston Watson, Sr. and Alice Elizabeth Watson; and J.W. "Bill" Christie, Inc., Appellants,

v.

ENSERCH CORPORATION, d/b/a Lone Star Gas Company, Appellee.

No. 05-88-01146-CV.

Court of Appeals of Texas, Dallas.

July 26, 1989.

Rehearing Denied Sept. 6, 1989.

Charles W. McGarry, Richard N. Countiss, Michael W. Huddleston, Dallas, for appellants.

Michael L. Knapek, Dallas, for appellee.

Before STEWART, ROWE and CARVER[1], JJ.

STEWART, Justice.

Mary Jean Parker, Daniel Allen Parker, Betty Jo Parker, Jenie Watson Hamilton, Preston Watson, Sr., and Alice Elizabeth Watson, collectively referred to as Parker, sued Enserch Corporation, doing business as Lone Star Gas Company, and J.W. "Bill" Christie, Incorporated, (Christie), for the wrongful death of Billy Joe Parker and Preston Edward Watson. The trial court granted Enserch summary judgment against Parker on her wrongful death action and against Christie on Enserch's indemnity claim. Both Parker and Christie appeal.

Parker, in her sole point of error, contends that the trial court erred in granting summary judgment for Enserch for two reasons: 1) because there was an issue of material fact as to whether Enserch retained control of any part of Christie's work, and 2) because Parker raised a material fact issue as to whether the statute of limitations was applicable to bar her cause of action. Christie, in two points of error, contends: 1) that the court erred in granting a summary judgment for Enserch on its indemnity claim because the indemnity agreement did not meet the express negligence rule, because it was not conspicuously set forth in the contract and because it did not contain an express assumption of liability in compliance with article 8306, section 3(d), of the Texas Worker's Compensation Act; and 2) that the court erred in denying its cross-motion for summary judgment. We reverse and remand as to Parker and reverse and render as to Christie.

## I. STANDARD OF REVIEW

In a summary judgment case, the question on appeal is not whether the sum-

1. The Honorable Spencer Carver, Justice, Retired, Court of Appeals, Fifth District of Texas, at Dallas, sitting by assignment.

mary judgment proof raises a fact issue with reference to the essential elements of a cause of action, but whether the summary judgment proof establishes as a matter of law that there is no genuine issue of fact as to one or more of the essential elements of the cause of action or defense. *Gibbs v. General Motors Corp.*, 450 S.W.2d 827, 828 (Tex.1970). When a movant for summary judgment relies on an affirmative defense, he must expressly present and conclusively prove all essential elements of that defense as a matter of law. *Montgomery v. Kennedy*, 669 S.W.2d 309, 310–11 (Tex.1984). In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985). Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor. *Id.*

## II. PARKER SUMMARY JUDGMENT

### A. Duty of Care

#### 1. Background

Preston and Billy were asphyxiated on February 8, 1984, when a natural gas leak occurred in the concrete manhole vault where they were working. They were employed by Christie at the time of the accident. The natural gas pipeline which leaked was owned and operated by Enserch Corporation through its division, Lone Star Gas Company.

Christie and Lone Star Gas had a written contract between them. The contract expressly provided that Christie was an independent contractor and that Christie was to perform and complete pipeline work according to work orders provided by Lone Star Gas. It was undisputed that the decedents, as Christie's employees, were engaged in a "cathodic protection" procedure pursuant to the written contract at the time they died.

This process involves insulating the bolts on gas line valves. The valves have two flanges, one on each side. The insulation process required the replacement of nuts and bolts in either one of the flanges of the valve, cleaning that flange and placing a plastic sleeve over the valve and new bolts. At the time of the accident, Preston was down in the vault working on an eight-inch valve; he had removed two of the eight bolts holding the flange when the gasket between the valve and flange blew out, causing a rapid escape of gas. At that time Billy and Scott Sullivan, the third man in the crew, were outside the vault. When Preston was overcome by the gas, Billy went in the vault to bring Preston out, but Billy was also overcome.

The gasket was not involved in the insulation process and should have lasted a lifetime. This gasket was not perfectly aligned with the valve, allowing metal to touch metal. If metal touches metal, a valve cannot be insulated. The pipeline in the vault had a maximum allowable operating pressure of 125 psig, but at the time of the gasket blowout, the estimated pressue on the pipeline and valve was 140 psig.

#### 2. Retention of Control

In its summary judgment motion against Parker, Enserch contended that Christie was an independent contractor, that the injuries arose from work being performed by Christie under its contract with Lone Star Gas, and therefore, Enserch did not owe a duty of care to Preston and Billy to prevent them from being injured while performing the cathodic protection services. However, Parker contends that, despite Christie's status as an independent contractor under the written contract, the summary judgment evidence raises a fact question as to whether Lone Star Gas retained control over a part of Christie's work, which created a duty to exercise reasonable care in the exercise of that control. *Redinger v. Living, Inc.*, 689 S.W.2d 415, 418 (Tex. 1985). The existence of a legal duty under a given set of circumstances is a question of law for the court. *Bryant v. Gulf Oil Corp.*, 694 S.W.2d 443, 446 (Tex.App.— Amarillo 1985, writ ref'd n.r.e.).

██ Generally, an owner or occupier of land does not have a duty to see that an independent contractor performs work in a

safe manner. *Abalos v. Oil Dev. Co.*, 544 S.W.2d 627 (Tex.1976). The *Abalos* court stated,

> [w]here the activity is conducted by, and is under the control of, an independent contractor, and where the danger arises out of the activity [of its] staff, the responsibility or duty is that of the independent contractor, and not that of the owner of the premises.

*Id.* at 631 (citing *Shell Chem. Co. v. Lamb*, 493 S.W.2d 742 (Tex.1973)). However, the Texas Supreme Court established an exception to this general rule in *Redinger*, 689 S.W.2d at 415. In that case, the court adopted the rule enunciated in the Restatement (Second) of Torts, which provides,

> One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care.

RESTATEMENT (SECOND) OF TORTS § 414 (1977); *Redinger*, 689 S.W.2d at 418. The rule is applicable to situations where the employer retains "some control over the manner in which the independent contractor's work is performed, but does not retain the degree of control which would subject him to liability as a master." *Redinger*, 689 S.W.2d at 418. *See also Exxon Corp. v. Quinn*, 726 S.W.2d 17 (Tex.1987). The employer's role must be more than a right to order the work to start or stop, to receive reports, or to inspect progress. *Redinger*, 689 S.W.2d at 418.

██ Thus, Parker contends that there is a fact question regarding whether Lone Star Gas exercised sufficient control over the manner in which Christie performed its work to give rise to a duty of reasonable care under the *Redinger*, decision. The written contract entered into between Christie and Lone Star Gas in part provides:

> 1. Contractor [Christie] agrees to furnish all tools, equipment, labor and specified materials (except materials herein provided to be furnished by Company)

[Lone Star Gas] and to do, perform, and complete pipeline work ... Company reserves the right to order work changes in the nature of additions, deletions, or modifications without invalidating this contract and necessary corresponding equitable adjustments in the contract price and time of completion shall be made by Company....

Parker contends this portion of the contract reserved the right to order changes in the work Christie performed. In addition, Parker relies on the following summary judgment proof: Lone Star Gas provided Preston and Billy with a procedure book detailing exactly how the cathodic protection procedure was to be performed and the materials to be used; a representative of Lone Star Gas routinely visited the job to check work performance and to be sure the job was being completed in a safe manner and to make sure the operations were performed correctly; if performed incorrectly for any reason, including safety reasons, the representative had the authority to shut down the operation; the representative also told Christie's workers what to do and the order in which it was to be done, kept the employees busy, and could reprimand them if he felt someone was not working hard enough.

Further, both in the morning and evening of the day of the accident, a Lone Star Gas inspector/supervisor, Bobby Rogers, was at the job site where Billy and Preston were working. Rogers knew that Billy and Preston were having difficulty in completing the insulation of the flange on which they were working, and he suggested that they insulate the flange on the other side of the valve. Parker maintains that these facts are more than sufficient to raise a fact issue under the *Redinger* rule of liability.

Enserch first replies that *Redinger* is distinguishable on its facts, noting that in that case the general contractor's superintendent was present at the time a subcontractor's employee was injured and gave the order which caused plaintiff's injury, while in this case, Rogers, the Lone Star Gas representative, was not present at the

time of the accident and it was Christie supervisors who had taught Billy and Preston how to perform cathodic protection services, specifically teaching them to take out one bolt at a time because otherwise you could have gas leakage. Enserch argues that *Redinger* is simply not applicable to the facts of this case. We disagree with the contention that the *Redinger* decision is confined to its facts because the court there adopted section 414 of the Restatement (Second) of Torts (1977). Thus the *Redinger* rule of liability applies to any set of facts which satisfies the requirements of that section.

Next, Enserch argues that *Redinger* did not deviate from prior case law holding that an owner does not have a duty to prevent injuries to an independent contractor's employee when the injuries arise out of the performance of work for which the independent contractor is hired. It cites the following cases that have been decided since the *Redinger* decision to support its position: *Amara v. Lain*, 725 S.W.2d 734 (Tex.App.—Fort Worth 1986, no writ); *Corpus v. K–J Oil Co.*, 720 S.W.2d 672 (Tex.App.—Austin 1986, writ ref'd n.r.e.); *Shell Oil Co. v. Songer*, 710 S.W.2d 615 (Tex.App.—Houston[1st Dist.] 1986, writ ref'd n.r.e.); and *Bryant v. Gulf Oil Corp.*, 694 S.W.2d 443 (Tex.App.—Amarillo 1985, writ ref'd n.r.e.).

We conclude that all of these cases are distinguishable. In *Amara,* there was no factual dispute as to whether the owner owed a duty to plaintiffs; in *Corpus,* the proof showed that the independent contractor controlled the job and that the owner retained no right of control; in *Shell,* a premises defect case, the independent contractor's sole control of the *activity* involved was undisputed; in *Bryant,* Bryant waived on appeal his contention that a fact question was raised as to whether Gulf might have retained the right to exercise control over the independent contractor sufficient to satisfy the *Redinger* rule of liability, because Bryant did not raise this issue in the trial court. None of these cases control the disposition of the right of control issue in our case.

■ We agree with Parker that Parker is entitled to introduce evidence outside of the contract to show that despite its terms, the true operating agreement was one where the employer retained the right to control some part of the contractor's work. *Newspapers, Inc. v. Love,* 380 S.W.2d 582, 592 (Tex.1964). *See Dave Lehr, Inc. v. Brown,* 127 Tex. 236, 237, 91 S.W.2d 693, 694 (1936). The *actual* exercise of control is evidence that the employer has really reserved a right of control. *Newspapers,* 380 S.W.2d at 592. Further, it is the right of control, and not the actual exercise of control, which gives rise to the employer's duty to see that an independent contractor performs work in a safe manner. *Pollard v. Missouri Pacific R.R.,* 759 S.W.2d 670, 671 (Tex.1988).

We conclude that the summary judgment evidence raises a question of fact as to whether Lone Star Gas might have retained the right to exercise control over Christie's work that amounted to more than the right to stop and start the work, to inspect progress or to receive reports. *Redinger,* 689 S.W.2d at 418; *Bryant,* 694 S.W.2d at 448. (on rehearing). There is some evidence that, under the true operating agreement between the parties, Lone Star Gas retained the power to direct the order in which the work should be done and to forbid its being done in a dangerous manner. *Redinger,* 689 S.W.2d at 418; RESTATEMENT (SECOND) OF TORTS § 414 comment a (1965).

### 3. Hazard Causing Injury

■ Parker also contends that even if Lone Star Gas retained no control over the work being done, Enserch is not relieved of liability unless it can also prove as a matter of law that the deaths of Billy and Preston were caused solely by Christie's activities and *not* by a defect in the premises or by an activity or instrumentality within Lone Star Gas's control. In other words, Parker contends that there is a material fact issue as to whether the hazard that killed Billy and Preston was "incidental" to their work. Parker relies on the following summary

judgment evidence to support her contention.

The fatal gas leak occurred when the gasket failed. The gasket was not involved in the cathodic protection operation being performed by Christie's employees. The cathodic protection job was "one of the safest jobs around" because the employees "didn't fool with any gas." Christie employees were not prepared to encounter a gas leak. If a gas leak was discovered, Lone Star Gas was called in to correct it. Lone Star Gas was at all times fully responsible for the maintenance of its pipelines, and it took the responsibility to replace the gasket that failed in this case. A cause of the problem Billy and Preston were having in insulating this particular valve would be that the flange and gasket were not perfectly aligned so that metal was touching metal, preventing insulation. The pipeline involved had a maximum allowable operating pressure of 125 psig. At the time of the accident, the estimated pressure on the pipeline and valve was 140 psig.

Parker argues that this evidence tends to prove that the fatal gas leak was caused by excessive pressure and a misaligned gasket, which constitutes premises defects, or alternatively, the failure of Lone Star Gas to operate its gas pipeline in a safe manner. She contends, therefore, that summary judgment was improper.

Enserch responds that Parker has no pleadings to support a claim of premises defect; that the evidence regarding the failure of the gasket, that a "gasket blew out," and that the gasket "was not involved in the insulation process," along with the evidence regarding the maximum allowable pressure and actual operating pressure on the pipeline at the time of the accident, is all based on hearsay; and that hearsay is not competent summary judgment proof. *Gracey v. West*, 422 S.W.2d 913 (Tex.1968); *McNeill v. Lovelace*, 529 S.W.2d 633 (Tex. Civ.App.—Fort Worth 1975, no writ).

■ Regarding Enserch's hearsay contention, Texas Rule of Evidence 802 provides that inadmissible hearsay evidence admitted without objection is not denied its probative value simply because it is hearsay. This Court has held that a hearsay objection to summary judgment evidence must be raised in a response to a motion for summary judgment or in a reply to a response to such a motion. *Dolenz v. A.B.*, 742 S.W.2d 82, 83 n. 2 (Tex.App.—Dallas 1987, writ denied). Enserch did not object to hearsay evidence in a reply to Parker's response to the motion for summary judgment. It may not now make such an objection.

We do not agree with Enserch's contention that Parker did not plead premises defect. Parker's first amended pleading states that Enserch was at fault for failing to turn off the gas in the pipeline and for failing to install a safety valve. In her response to Enserch's motion for summary judgment, she specifically stated that Enserch owed a duty to make the premises reasonable safe. These pleadings may be construed to allege the premises defect cause of action. Further, Enserch did not assert this pleading defect in its motion for summary judgment. Even if it had, summary judgment is an inappropriate vehicle for resolving the issue of whether pleadings fail to state a cause of action. *Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex.1983); *Spencer v. City of Seagoville*, 700 S.W.2d 953, 956–57 (Tex.App.—Dallas 1985, no writ).

Lone Star Gas owed a duty to Christie as its business invitee to exercise ordinary care to maintain its premises in reasonably safe condition or to warn Christie of any dangerous conditions which Lone Star Gas knew or should have known about and which were not reasonably apparent to Christie. *Bryant*, 694 S.W.2d at 446. We agree with Parker that the evidence raises a fact question as to whether the hazard that killed Billy and Preston was incidental to their work or was due to a premises defect or dangerous condition giving rise to the duty described above.

Because we conclude that there are preliminary fact issues to be resolved before the issue of whether Enserch owed a duty of care to the decedents can be resolved, we hold that the trial court erred in grant-

ing summary judgment to Enserch on the ground that Enserch owed no duty, as a matter of law, to Christie's employees. We sustain Parker's first argument under its point of error.

## B. STATUTE OF LIMITATIONS

The incident upon which Parker bases her claim occurred on February 8, 1984. On February 3, 1986, Parker instituted this suit, naming Lone Star Gas Company of Texas as a defendant. On February 20, 1984, Lone Star Gas Company of Texas, Inc., filed its original answer; it pled, pursuant to Texas Rule of Civil Procedure 93, that there was a defect in the parties because Lone Star Gas Company of Texas, Inc., was not liable for the relief sought by plaintiffs. Furthermore, Lone Star Gas Company of Texas, Inc., affirmatively pled that it had not owned, maintained or operated any pipelines in Richardson, Dallas County, Texas, nor had it had a working relationship with Christie. On April 14, 1987, Lone Star Gas Company of Texas, Inc., filed a motion for summary judgment, contending that it was not liable as a matter of law.

On August 5, 1987, more than one and one-half years after filing suit, Parker filed a motion to substitute in the properly named party, in which Parker, for the first time, contended that the proper designation for the defendant in this action was Enserch Corporation, d/b/a Lone Star Gas Company. Parker alleged that the designation of the Lone Star Gas Company of Texas, as the defendant was a "misnomer" and that Parker was not attempting to add a new party to the litigation. She also alleged that Lone Star Gas Company of Texas is a wholly owned subsidiary of Enserch Corporation which also does business as Lone Star Gas Company; that the subsidiary originally served had a name deceptively similar to that of its parent; and that the proper defendant had not been prejudiced by the misstatement of Lone Star Gas Company's proper legal name. After a hearing, the trial court granted Parker's motion on August 14, 1987. Nevertheless, the trial court later generally granted Enserch's motion for summary judgment, in which Enserch urged limitations as one of its grounds.

It is undisputed that Enserch Corporation doing business as Lone Star Gas Company was not made a party to this suit until more than two years after the incident in question and that the cause of action alleged is governed by the two-year statute of limitations. TEX.CIV.PRAC. & REM. CODE ANN. § 16.003 (Vernon 1986).

■■■■ The purpose of statutes of limitations is to compel the exercise of a right within a reasonable time so that the opposite party has a fair opportunity to defend the suit. *Continental Southern Lines, Inc. v. Hilland*, 528 S.W.2d 828, 831 (Tex. 1975). There are situations in which courts have refused to apply these rigid statutes, in view of their underlying purpose. *See id.* The general misnomer rule is "if the plaintiff misnames the person sought to be held liable and serves *that person*, then the subsequent amendment of plaintiff's pleadings to correctly state the name of the defendant relates back to the date of the original petition." *DeLeon Torres v. Johns*, 706 S.W.2d 693, 695 (Tex.App.–Corpus Christi 1986, no writ); *Charter Oak Fire Ins. Co. v. Square*, 526 S.W.2d 635 (Tex.Civ.App.—Waco 1975, writ ref'd n.r. e.). We disagree that this is a "misnomer" case; rather, it is a case of misidentification because Parker named and served the wrong person. A "misnomer" case is one in which the plaintiff serves the proper defendant, but under the wrong name. *DeLeon Torres v. Johns*, 706 S.W.2d at 695.

■■■ However, in cases similar to this, our courts have held that when the wrong defendant is sued and served and the proper defendant is not named until after the statute of limitations has run, limitations will not bar the suit against the proper defendant, so long as the latter is cognizant of the facts, is not misled and is not placed at a disadvantage in obtaining the relevant evidence necessary for its defense. *Palmer v. Enserch Corp.*, 728 S.W.2d 431, 433 (Tex.App.—Austin 1987, writ ref'd n.r.e.) (citing *Hilland*, 528 S.W.2d at 831, *Price v. Estate of Anderson*, 522 S.W.2d

690 (Tex.1975), and *Howell v. Coca Cola Bottling Co. of Lubbock,* 595 S.W.2d 208 (Tex.Civ.App.—Amarillo 1980, writ ref'd n.r.e.)). The Texas Supreme Court, in *Matthews Trucking Co. v. Smith,* 682 S.W.2d 237, 239 (Tex.1984), found that there also must be a business relationship between the two defendants. (citing *Hilland* and *Gentry v. Credit Plan Corp.,* 528 S.W.2d 571 (Tex.1975)). The entire record can be reviewed on appeal in making these determinations. *DeLeon Torres,* 706 S.W.2d at 695 (citing *Howell,* 595 S.W.2d at 212). Waiver of application of the statute of limitations is particularly compelling when the corporate defendants have reasonably similar names which might cause confusion. *Palmer,* 728 S.W.2d at 433.

Generally a plaintiff must exercise diligence in the prosecution of his cause of action. The party must plead and prove that he exercised due care to prevent the running of the statute in order to overcome the properly asserted defense of limitations. *Id.* at 434. However, as analyzed at length by the *Palmer* court, under *Hilland* and its progeny, when the cause of action is timely asserted but against the wrong party, diligence is not the issue; the issue is "whether the protection of the limitations statute is equitable under the facts once the correct party is named." *Palmer,* 728 S.W.2d at 434.

The summary judgment evidence shows that Lone Star Gas Company changed its name to Enserch Corporation in 1975, but that Enserch continued doing the utility end of the business under the assumed name of Lone Star Gas Company as a division of Enserch. Enserch holds stock in various other companies engaged in oil field services, engineering and construction, and exploration and production. It owns all of the stock in Lone Star Gas Company of Texas, Inc., which owns a three-or-four-hundred-mile pipeline into West Texas and maybe some small feeder lines off of that. Both Enserch and Lone Star Gas Company of Texas, Inc. have the same registered agent for service. When Lone Star Gas Company of Texas, Inc. was served in this case, its legal department handled the utility litigation involving both Lone Star Gas Company of Texas, Inc. and Lone Star Gas Company, a division of Enserch. After a reorganization in May, 1986, the litigation department of Enserch was assigned all of the utility litigation, which included suits involving Lone Star Gas Company, a division of Enserch, Lone Star Gas Company of Texas, Inc., and other entities. This case was assigned to Clint Adams, a senior attorney in the Enserch litigation department, in May or June, 1986. When he received the file, Adams noticed a pleading indicating a defect in parties; he decided that the wrong party had been sued and that the correct party would be Enserch Corporation or Lone Star Gas Company, a division of Enserch.

Adams filed his designation of attorney of record for Lone Star Gas Company of Texas, Inc. on July 22, 1986. He was present for four of the five depositions in which Parker deposed five Christie employees having knowledge of relevant facts. Parker also took Adams' deposition, in which he admitted that Lone Star Gas Company and Lone Star Gas Company of Texas, Inc. are often confused, and that Lone Star Gas Company of Texas, Inc. has been named as a party defendant when Lone Star Gas Company was the target defendant. Adams also testified that the only prejudice he could think of would relate to an agreement between Lone Star Gas Company, a division of Enserch, and Christie which related to indemnification and Christie's providing a defense in a situation like this. He agreed that he was talking about if the suit continued in the name of Lone Star Gas Company of Texas, Inc., versus a substitution of the proper party, which would then bring the indemnification agreement into effect.

Parker contends that the above facts are sufficient to avoid a limitations defense under the rationale of *Price,* 522 S.W.2d at 690 and *Hilland,* 528 S.W.2d at 828. Therefore, she argues, summary judgment based on limitations was improper.

Parker responded to the motion for summary judgment with proof of a basis for waiver of the application of the limita-

tions statute by showing that Enserch, the proper defendant, was closely associated in business with the "wrong defendant," *Matthews Trucking Co.*, 682 S.W.2d at 239, was always cognizant of the facts, was not misled, and was not placed at a disadvantage in obtaining the relevant evidence necessary for its defense. *Palmer*, 728 S.W.2d at 433. Under these facts, Enserch had the burden to negate, as a matter of law, why the application of the statute should not be waived pursuant to the *Hilland* test. *Id.* at 436. Enserch has not met this burden. We hold that there is a material fact issue as to whether Enserch was misled or placed at a disadvantage by Parker's error and that the trial court erred if it granted summary judgment on the ground that Parker's suit was barred by limitations as a matter of law.

Having held that neither ground asserted by Enserch in its motion for summary judgment against Parker will support the summary judgment, we sustain Parker's point of error. We reverse and remand Parker's case for further proceedings.

## CHRISTIE SUMMARY JUDGMENT

Enserch based its motion for summary judgment against Christie on the sole ground that Christie was contractually bound as a matter of law to indemnify Lone Star Gas. In its first point of error, Christie argues that the trial court erred in granting Enserch's motion because: (1) the indemnity language of the contract does not satisfy the express negligence rule; (2) the indemnity clause is not conspicuously set forth in the contract; and (3) the agreement does not contain an express assumption of liability for injuries to Christie's own employees in compliance with article 8306, section 3(d) of the Texas Workers' Compensation Act.

In the contract between Lone Star Gas and Christie, Christie is the "contractor" and Lone Star Gas is the "company." Paragraph nine of the contract provides:

Contractor assumes entire responsibility and liability for any claim or actions based on or arising out of injuries, including death, to persons or damages to or destruction of property, sustained or alleged to have been sustained in connection with or to have arisen out of or incidental to the performance of this contract by contractor, its agents and employees, and its subcontractors, their agents and employees, *regardless of whether such claims or actions are founded in whole or in part upon alleged negligence of company, company's representative, or the employees, agents, invitees, or licensees thereof.* Contractor further agrees to indemnify and hold harmless company and its representatives, and the employees, agents, invitees, and licensees thereof in respect of any such matters and agrees to defend any claim or suit or action brought against company, company's representative, licensees thereof, and to pay all damages, losses, costs and expenses, including reasonable attorneys' fees, incurred by company, company's representatives, and its employees, agents, invitees and licenses as a result of the claim or institution of any suit or action or the defense thereof, as well as any judgment or settlements therein or thereof. Contractor agrees to cause any and all general liability and other insurance coverage to be provided by contractor to include the responsibilities described under this contract.

(emphasis added).

Christie first argues that under the express negligence test enunciated in *Ethyl Corp. v. Daniel Construction Co.*, 725 S.W.2d 705 (Tex.1987), the indemnity provision is unenforceable because it conceals Lone Star Gas's true intent to indemnify its own negligence. Christie maintains that there are problems with both sentences in the provision: 1) neither sentence specifically and affirmatively states that Lone Star Gas is indemnified for its own negligence; and 2) the first sentence, the only place where the word "negligence" appears, uses the phrase "contractor assumes entire responsibility and liability" and does not state that it deals with "indemnity," while the second sentence using familiar indemnity language deals only with the de-

fense costs. It argues that the clause containing the actual reference to "negligence" is attached to a broad, general statement of the so-called assumption of liability and, thus, is no different from that disapproved in *Singleton v. Crown Central*, 729 S.W.2d 690, 691 (Tex.1987), where the general indemnity clause was followed by an "exception" for sole negligence. *Accord Linden–Alimak, Inc. v. McDonald*, 745 S.W.2d 82, 86 (Tex.App.—Fort Worth 1988, writ denied). Christie also relies on *Gulf–Coast Masonry, Inc. v. Owens–Illinois, Inc.*, 739 S.W.2d 239 (Tex.1987) and *Adams v. Spring Valley*, 728 S.W.2d 412 (Tex.App.—Dallas 1987, ref'd, n.r.e.) as examples of the very restrictive interpretation of the express negligence rule that the courts have used since the *Ethyl* decision. Finally, Christie attempts to distinguish *B–F–W Construction Co. v. Garza*, 748 S.W.2d 611, 614 (Tex.App.—Fort Worth 1988, no writ), which held that the language, "regardless of cause or of any fault or negligence of contractor," met the express negligence test. We disagree with Christie's contentions.

We conclude that the language in the agreement at bar is similar to that upheld in the *B–F–W* case. Christie's contention, that its agreement is broader than that in *B–F–W* because its agreement included the "company's employees, agents, invitees or licensees thereof" and the *B–F–W* provision did not, is without merit. Language similar to that in Christie's agreement was recently upheld in *Atlantic Richfield Co. v. Petroleum Personnel, Inc.*, 768 S.W.2d 724 (1989). *Atlantic Richfield* involved the application of the "express negligence" test to an indemnity contract between an owner and a contractor. The contract contained the following indemnity provision:

> Contractor agrees to hold harmless and unconditionally indemnify company against and for all liability, cost, expenses, claims and damages which the company may at anytime suffer or sustain or become liable for by reason of any accidents, damages or injuries either to the persons or property or both, of contractor, or of the workmen of either party, or of any other parties, or to the property of company, in any matter arising from the work performed hereunder, *including but not limited to any negligent act or omission of company, its officers, agents or employees....*

The Court held that this provision met the requirements of the express negligence doctrine set out in *Ethyl*. In so holding, the Court specifically distinguished two of the cases cited by appellant in which the court held that the express negligence requirement was not met.

The Court distinguished the contract involved in *Singleton v. Crown Central Petroleum Corp.*, 729 S.W.2d 690 (Tex.1987), noting that the indemnity provision in that case specifically stated only what was *not* to be indemnified, ("the sole negligence of owner"), and did not specifically state that the contractor was to indemnify the owner for the owner's own negligence. *Atlantic Richfield*, 768 S.W.2d at 725. The *Atlantic Richfield* court also evaluated the contract in *Gulf Coast Masonry, Inc. v. Owens–Illinois, Inc.*, 739 S.W.2d 239 (Tex. 1987). In *Gulf Coast*, the agreement specified the contractor's duty to indemnify the owner for claims resulting from the *contractor's* acts, but did not specify any obligation to indemnify for claims from acts of other parties. *Atlantic Richfield*, 768 S.W.2d at 725.

In the first sentence of the indemnity provision in the present case, Christie agreed to "assume entire responsibility and liability for any claim ... based on ... injuries ... or damages ... sustained ... in connection with ... performance of this contract ... *regardless of whether such claims are founded in whole or in part upon alleged negligence of company....*, company's representative, or the employees, agents, invitees, or licensees thereof." The beginning of the second sentence states that Christie "further agrees to indemnify and hold harmless company ... in respect to *any such matters....*" (Emphasis added). We conclude that "any such matters" refers to the claims or actions described in the first sentence. Considering the pertinent language of these two sentences together, we hold that this lan-

guage is sufficient to define the parties' intent to indemnify Lone Star Gas for the consequences of its own negligence. *Id.* Christie's first ground for reversing Enserch's summary judgment is overruled.

■ Christie next argues that the indemnity clause is not "'conspicuous' as required under Texas law." It argues that because the contract is in small, difficult-to-read type, in the same color ink as the other provisions, without underlining or highlighting, and without an identifying heading, it "reflects that its drafter made no attempt to make the clause conspicuous or bring it to the attention of Christie." However, in its response to Enserch's motion for summary judgment, Christie did not make this argument. "Issues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal." TÉX.R.CIV.P. 166a(c); *City of Houston v. Clear Creek Basin Authority,* 589 S.W.2d 671, 678 (Tex.1979). Christie has waived its "conspicuousness" argument by not presenting it to the trial court.

■ Finally, Christie contends that the indemnity provision does not overcome the bar of the Texas Workers' Compensation Act. TEX.REV.CIV.STAT.ANN. art. 8306 (Vernon Supp.1989). Section 3(d) of article 8306 of that statute provides that a subscribing employer has no liability to reimburse or hold other persons harmless on a judgment or settlement resulting from injury or death of his employee "in the absence of a written agreement expressly assuming such liability executed by the subscriber prior to such injury or death." *Id.* at § 3(d). Christie argues that because this provision of the act requires an express waiver of the protection of the workers' compensation bar, the agreement must state that the indemnitor specifically agrees to indemnify the indemnitee for liability based on the claims of indemnitor's employees.

Thus, Christie contends that the exception to an employer's general immunity contained in section 3(d) of article 8306 is not applicable unless the agreement is as specific as the one upheld in *Robert H.*

*Smith v. Tennessee Title, Inc.,* 719 S.W.2d 385, 387–88 (Tex.App.—Houston [1st Dist.] 1986, no writ). The contract provision in *Smith* stated that "the [subcontractor's] indemnification obligation ... shall not be limited in any way by any limitation on the amount of damages, compensation or benefits payable by or for the subcontractor under workmen's compensation acts...." *Id.*

As further authority for its position, Christie cites *Port Royal Development v. Braselton Construction Co.,* 716 S.W.2d 630, 632–33 (Tex.App.—Corpus Christi 1986, writ ref'd n.r.e.) and *Charter Builders v. Durham,* 683 S.W.2d 487 (Tex.App.—Dallas 1984, writ ref'd n.r.e.), where the courts held that the respective indemnity agreements in those cases did not meet the specificity requirements necessary to invoke the exception to the general immunity provision in article 8306, section 3(d).

On the other hand, Enserch asserts that the following language in the agreement more than satisfies the exception to the worker's compensation bar: Christie "assumes entire responsibility and liability for ... injuries ... sustained ... by [Christie] its agents and employees...." We conclude that Enserch has omitted relevant language of the agreement in its quotation. The quoted language reads in relevant part:

[Christie] assumes entire responsibility and liability for ... injuries ... to persons ... sustained ... *in connection with ... the performance of this contract* by [Christie], its agents and employees, ...

(Emphasis added.) The contract does not clearly state that Christie assumes liability for injuries to its employees; it states Christie's liability for injuries to persons as a result of performance of the contract by Christie and it employees. This language is similar to that held inadequate to overcome the workers' compensation bar in *Port Royal,* 716 S.W.2d at 632, (Indemnifying contractor against liability "for or on account of injury to ... person or persons, ... occurring by reason of ... the act or neglect of SUBCONTRACTOR ... in con-

nection with performance of this contract.") and in *Charter Builders*, 683 S.W.2d at 491 (indemnifying owner and/or Contractor against liability "for personal injury ... arising ... on account of or in connection with any work done by subcontractor under this subcontract ...").

In response to Christie's apparent position that the term "workers' compensation" must be specifically mentioned in the contract to satisfy the exception to general immunity, Enserch assert that a similar position was rejected in *Verson Allsteel Press Co. v. Carrier Corp.*, 718 S.W.2d 300 (Tex.App.—Tyler 1985, writ ref'd n.r.e.). In that case the indemnitor contended that the indemnity clause must state that the indemnity covers injuries to employees of the indemnitor-employer, but the court stated:

> We think the [indemnitor's] position is excessively restrictive and unrealistic.... In analyzing the sufficiency of indemnity contracts entered into by subscribers, the intent of the parties is still to be gleaned from examining all provisions of the contract in light of the circumstances surrounding its execution.

718 S.W.2d at 302, 303.

We agree with the Tyler court's statement that the contract need not specifically state that it covers injuries to the indemnitor's employees to satisfy the exception to the workers' compensation bar. We also agree that it is the parties' intent as expressed in the contract that determines whether the indemnitor has waived his general immunity.

In the *Verson* case, the court held that the exception to the bar was satisfied. However, there the indemnitor assumed responsibility for providing adequate safeguards and safety devices to fully protect the operator of the press brake causing the injury, and the operator necessarily was indemnitor's employee; the contract also covered any injury or death to "any person or persons," and the court held that read in context "any person" included the indemnitor's employees. We have no such provisions indicating an intent by the parties in this case that Christie was assuming liability for injuries to its own employees.

Finally, Enserch cites *Petroleum Exploration & Operating Corp. v. J.W. McCutchen Drilling Co.*, 593 S.W.2d 831 (Tex.Civ.App.—Fort Worth 1980, writ ref'd n.r.e.) where the court held that the exception to the bar was satisfied although the written contract did not specifically mention the workers' compensation statute. We agree with Enserch that the exception to the bar maybe satisfied without specific mention of the statute. We also agree with the holding in the *Petroleum Exploration* case, which was based on an express provision in the contract there that the indemnitor agreed to indemnify from all claims in favor of *the indemnitor's employees* or third parties. We have no such language in the agreement before us.

We hold that under the language of the indemnity agreement in the present case, Christie did not expressly assume liability for the injuries to its own employees. *Port Royal Development*, 716 S.W.2d at 633; *Charter Builders*, 683 S.W.2d at 493. Consequently, the exception to the workers' compensation bar was not satisfied. We sustain Christie's first point of error on the basis of its third argument.

In its second point, Christie contends that the trial court erred in denying its cross-motion for summary judgment. We agree. In light of our ruling under Christie's first point that the contract at issue is insufficient to remove the workers' compensation bar provided in article 8306 section 3(d), Christie is entitled to judgment against Enserch on its indemnity claim as a matter of law. Christie's second point is sustained.

We reverse the trial court's judgment against Parker and remand that case to the trial court for further proceedings. We reverse the trial court's judgment against Christie and render judgment that Enserch take nothing on its cross-claim for indemnity against Christie.