**Richard and Marilu TIRRES, Individually and as Next Friends, Heirs, and as Representatives of the Estate of Richard Thomas Tirres, A Minor, Deceased, Appellants,**

v.

**EL PASO SAND PRODUCTS, INC., Appellee.**

**No. 08–90–00057–CV.**

Court of Appeals of Texas, El Paso.

April 24, 1991.

Rehearing Overruled May 22, 1991.

J. Roberto Oaxaca, El Paso, for appellants.

Stephen B. Tatem, Blake W. Barrow, Scott, Hulse, Marshall, Feuille, Finger & Thurmond, P.C., El Paso, for appellee.

Before OSBORN, C.J., and FULLER and KOEHLER, JJ.

## OPINION

KOEHLER, Justice.

In a wrongful death suit brought by the parents of a deceased minor child against an independent contractor and his employer, the trial court granted the employer's (Appellee herein) motion for summary judgment and denied a similar motion by the

plaintiffs, Appellants herein. This appeal was perfected following the severance of the causes of action against the other defendants. We affirm.

The Appellants, Richard and Marilu Tirres ("Tirres") bring four points of error, two of which complain of the granting of the motion for summary judgment in favor of Appellee, El Paso Sand Products, Inc. ("El Paso Sand"), and two of which complain of the denial of their motion. Specifically, Tirres assert in their first two points that their pleadings and summary judgment proof state a cause of action based first, on Restatement (Second) of Torts, § 414 (1965 and Appendix 1986), and second, upon the "franchise rule" or the "statutory employee" rule. Under their third and fourth points, the Tirres claim that they were entitled to summary judgment on their motion because of the failure of El Paso Sand to exercise its control over Roberto Llamas, the independent contractor ("Llamas") in a reasonable manner, established as a matter of law, and because the negligence of Llamas is imputed to El Paso Sand as a matter of law. (The underlying issues are whether the kind and amount of control that El Paso Sand either actually asserted or had the right to assert over Llamas subjected El Paso Sand to liability for Llamas' alleged negligence and whether El Paso Sand assumed a non-delegable duty when it obtained and furnished to Llamas an oversize load permit from the Texas Highway Department.)

■ In reviewing a summary judgment appeal, the general rule established by the Supreme Court is that this Court must determine whether the successful movant in the trial court carried its burden of showing that there is no genuine issue of a material fact issue and that it is entitled to judgment as a matter of law. *Nixon v. Mr. Property Management Company, Inc.*, 690 S.W.2d 546, 548 (Tex.1985). In deciding whether or not there is a disputed fact issue precluding summary judgment, evidence favorable to the non-movant is to be taken as true, and in that connection, every reasonable inference must be indulged in favor of the non-movant and any doubts

resolved in his favor. *Nixon*, 690 S.W.2d at 548–49. If the defendant is the movant and he submits summary judgment evidence disproving at least one element of the plaintiff's case, then summary judgment should be granted. *Bradley v. Quality Service Tank Lines*, 659 S.W.2d 33, 34 (Tex.1983); *Rayos v. Chrysler Credit Corporation*, 683 S.W.2d 546, 547 (Tex.App.— El Paso 1985, no writ).

### THE FACTS

El Paso Sand had employed Llamas as an independent contractor to move its rock crushing machinery and equipment from Tahoka, Texas to El Paso. Llamas, a former ten-year employee of El Paso Sand, known to be a safe and competent driver during his employment, had his own tractor but was required to use a trailer which had been leased by El Paso Sand for the purpose. On October 8, 1988, the day before the accident, he completed the transportation of a load to El Paso which was offloaded on the following day. El Paso Sand had obtained an oversize load permit in its name for the October 8 load from the Texas Highway Department. The permit specified that though it would not expire until 6 p.m. on October 11, 1988, the trip had to start and be completed on October 8, a requirement with which Llamas had complied. Around 8 p.m. on October 9, Llamas started from El Paso on his way back to Tahoka to pick up another load with his tractor and El Paso Sand's empty trailer when he was involved in a collision with an automobile which broadsided the trailer and in which Tirres' son, Richard Thomas Tirres, was a passenger. Young Tirres died as a result of the injuries he sustained. Tirres subsequently filed this suit against Llamas, El Paso Sand and the driver of the automobile in which young Tirres rode.

### CAUSE OF ACTION UNDER RESTATEMENT OF LAW (SECOND)

■ The Tirres contend first in their allegations that El Paso Sand, by requiring Llamas to use the trailer leased by it to haul its equipment from Tahoka to El Paso,

exercised sufficient control over Llamas to state a cause of action under Restatement (Second) of Torts, § 414 (1965 and Appendix 1986). Section 414 provides as follows:

One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care.[1]

The general rule was and is that an owner or employer does not have a duty to see that an independent contractor performs his work in a safe manner. *Abalos v. Oil Development Company of Texas*, 544 S.W.2d 627 (Tex.1976). As an exception to that general rule, the law as set forth in Section 414 has been adopted by our Supreme Court as the law of this state. *Redinger v. Living, Inc.*, 689 S.W.2d 415 (Tex.1985). In *Redinger*, a premises case, the Court found that as a result of evidence that the general contractor retained the power to control the order of work done on the job site and to forbid the work being done in a dangerous manner, the negligent exercise of that control over a dirt subcontractor subjected the general contractor to liability for injuries to an employee of a plumbing subcontractor under Section 414. The Court noted that, as stated in comments a and c, Section 414 applies when the employer retains some control over the manner in which the subcontractor performs his work, but does not retain the degree of control which would subject him to liability as a master. The right to control "must be more than a general right to order the work to start or stop, to inspect progress or receive reports." 689 S.W.2d at 418.

*Redinger* has been followed by a number of Texas cases which cite and rely to some extent on Section 414 for their dispositions: *Pollard v. Missouri Pacific Railroad Co.*, 759 S.W.2d 670 (Tex.1988); *Exxon Corporation v. Quinn*, 726 S.W.2d 17 (Tex.1987); *Tovar v. Amarillo Oil Co.*, 692 S.W.2d 469 (Tex.1985); *Parker v. Enserch Corporation*, 776 S.W.2d 638 (Tex.App.—Dallas 1989), *aff'd in part and rev'd in part* 794 S.W.2d 2 (Tex.1990); *Gulf States Utilities Company v. Dryden*, 735 S.W.2d 263 (Tex. App.—Beaumont 1987, no writ); *Amara v. Lain*, 725 S.W.2d 734, 737 (Tex.App.—Fort Worth 1986, no writ); *Exxon Corporation*

---

**1.** Under Section 414 appear the following three comments:

a. If the employer of an independent contractor retains control over the operative detail of doing any part of the work, he is subject to liability for the negligence of the employees of the contractor engaged therein, under the rules of that part of the law of Agency which deals with the relation of master and servant. The employer may, however, retain a control less than that which is necessary to subject him to liability as master. He may retain only the power to direct the order in which the work shall be done, or to forbid its being done in a manner likely to be dangerous to himself or others. Such a supervisory control may not subject him to liability under the principles of Agency, but he may be liable under the rule stated in this Section unless he exercises his supervisory control with reasonable care so as to prevent the work which he has ordered to be done from causing injury to others.

b. The rule stated in this Section is usually, though not exclusively, applicable when a principal contractor entrusts a part of the work to subcontractors, but himself or through a foreman superintends the entire job. In such a situation, the principal contractor is subject to liability if he fails to prevent the subcontractors from doing even the details of the work in a way unreasonably dangerous to others, if he knows or by the exercise of reasonable care should know that the subcontractors' work is being so done, and has the opportunity to prevent it by exercising the power of control which he has retained in himself. So too, he is subject to liability if he knows or should know that the subcontractors have carelessly done their work in such a way as to create a dangerous condition, and fails to exercise reasonable care either to remedy it himself or by the exercise of his control cause the subcontractor to do so.

c. In order for the rule stated in this Section to apply, the employer must have retained at least some degree of control over the manner in which the work is done. It is not enough that he has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations. Such a general right is usually reserved to employers, but it does not mean that the contractor is controlled as to his methods of work, or as to operative detail. There must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way.

*v. Roberts,* 724 S.W.2d 863 (Tex.App.—Texarkana 1986, writ ref'd n.r.e.); *Daniel Construction Company v. Ethyl Corporation,* 714 S.W.2d 51 (Tex.App.—Houston [14th Dist.] 1986), *aff'd,* 725 S.W.2d 705 (Tex. 1987); *Phelan v. Lopez,* 701 S.W.2d 327 (Tex.App.—Beaumont 1985, no writ); *Bryant v. Gulf Oil Corporation,* 694 S.W.2d 443 (Tex.App.—Amarillo 1985, writ ref'd n.r.e.).

 Although the application of Section 414 is not limited by *Redinger* to premises cases but applies to any set of facts that meets the requirements of that section; *Parker,* 776 S.W.2d at 643; all of the Texas cases cited above are cases where the employer, general contractor or owner controlled or had at least the right to control some aspects of the independent contractor's or subcontractor's work on the premises. This is not just a strange coincidence. Having the right to control in the employer/independent contractor context, implies having the physical ability to control the work or activity, an ingredient missing where the independent contractor is a trucker carrying material or equipment to or from a job site at the time a third party is injured by his negligence. Requiring the trucker to use an employer-leased trailer and to obtain certain liability insurance are conditions of employment, not evidence of rights to control. Specifying the order in which equipment or machinery was to be moved and the hours it could be picked up and delivered could be evidence of control if a third party was injured while the truck was being loaded or unloaded, but not evidence of control over the manner in which the trucker drove his truck, loaded or unloaded, on the highway. Obtaining an oversize permit, when required, which specified the route and time to travel was not evidence of control over the independent contractor but merely evidence that the employer was complying with the requirements of Tex.Rev.Civ.Stat.Ann. art. 6701a (Vernon Supp.1991).

 Even when applicable to a part of the subcontractor's performance, Section 414 does not purport to impose general vicarious liability in the employer for the subcontractor's entire performance unless the supervisory control so extends. Comment "a" of Section 414 speaks in terms of "supervisory control;" under comment "b," reference is made that the section is usually applicable where the general contractor himself or through a foreman superintends the entire job; while comment "c" makes mention that the employer must retain such a right of supervision that the independent contractor is not completely free to do his work in his own way. In light of the commentaries and the case law, it is clear that Section 414 imposes a duty on the employer, who has retained the right to control the independent contractor in some aspect of his work, to exercise reasonable care in the exercise of that control so as to avoid proximately causing injuries or damages to others while in the performance of the particular aspect. For example, a general contractor who has the right or has assumed the right to control some of the work of a plumbing subcontractor on the job, has a duty to exercise that control with reasonable care so that no one will be injured while the plumber is doing that work, but that duty does not extend to someone who is injured by an employee of the plumber who negligently runs the subcontractor's truck into the injured person while the employee is away from the job to pick up plumbing supplies, unless, of course, the employee was being directed or controlled by the general contractor.

We hold that under the facts of this case, El Paso Sand owed no duty to the deceased, Richard Thomas Tirres, for the reason that it had no right or ability to control Llamas in the manner in which he operated his truck and therefore, the law as stated in Section 414 does not apply. Point of Error No. One is overruled.

 Under their second point, Tirres contend that by virtue of El Paso Sand having obtained an oversize permit for the transportation of the load of machinery from Tahoka to El Paso on October 8, unloaded on October 9, the operation of Llamas' truck under the oversize permit is similar to the operation of a vehicle under a

government franchise, Tirres' theory being that the rights granted by the franchise are non-delegable making anyone using it a "statutory employee" of the person or corporation to whom the permit was issued. Tirres argue that the oversize permit required under Article 6701a is equivalent to the permits which motor carriers must obtain from either the Railroad Commission of Texas (pursuant to the Texas Motor Carrier Act, Tex.Rev.Civ.Stat.Ann. art. 911b [Vernon 1964 and Supp.1991]) or the Interstate Commerce Commission, or both, and which grant the motor carriers franchises to operate legally on the highways of Texas and the nation. They argue that an employer obtaining an oversize permit for the independent contractor is or should be no different than an employer who obtains a common carrier permit from the Railroad Commission and then transfers the permit to an independent contractor or allows him to operate his own truck under the permit, which has the effect of making the independent contractor a "statutory employee" of the permittee and thus vicariously liable for the acts of the truck operator. *Greyhound Van Lines, Inc. v. Bellamy*, 502 S.W.2d 586 (Tex.Civ.App.—Waco 1973, no writ); *Wardlow v. Newberry*, 319 S.W.2d 437, 442 (Tex.Civ.App.—Eastland 1958, no writ); *Empire Indemnity Insurance Company v. Carolina Casualty Insurance Company*, 838 F.2d 1428, 1433 (5th Cir.1988). Liability of El Paso Sand would be predicated on the oversize permit which granted to it a franchise to carry on an activity, that of moving oversize machinery over the state highways, which involved an unreasonable risk of harm to others. Restatement (Second) of Torts, § 428 (1965 and Appendix 1986). Section 428 provides as follows:

> An individual or a corporation carrying on an activity which can be lawfully carried on only under a franchise granted by public authority and which involves an unreasonable risk of harm to others, is subject to liability for physical harm caused to such others by the negligence of a contractor employed to do work in carrying on the activity.

We disagree with the applicability of this theory of liability.

■ First, while permits issued under the provisions of the Texas Motor Carrier Act are granted on the basis of public convenience and necessity generally not only for the purpose of protecting the safety and convenience of the public in the use of the highways and to preserve the highways themselves, but through regulation, to prevent unfair competition between carriers, *Texas & P. Ry. Co. v. Railroad Commission*, 138 S.W.2d 927, 930 (Tex.Civ. App.—Austin 1940), *rev'd on other grounds*, 138 Tex. 148, 157 S.W.2d 622 (1941), the oversize permits issued pursuant to Article 6701a are one time authorizations for the transportation over a particular state highway of equipment that exceeds the weight or size limits allowed by law. The purpose for requiring this special permit is to protect the highway from damage and to insure through a bond requirement that any damage sustained to the highway by an overweight or oversize load will be made good by the permittee. Since anyone, not just a common carrier, who wishes to move an oversize or over-weight load over the state highways, not only is required, but has a right, to obtain a special permit under Article 6701a so that he will not be in violation of size or weight restrictions, which permit the Highway Department may not unreasonably refuse to issue, the permission granted by the permit is not the granting of a franchise, the latter being the granting of a special privilege to a limited number of persons or business entities. Thus, the rule stated in Section 428 of the Restatement has no application. The oversize permit not being a franchise, even if the accident had occurred while the oversize load was en route to El Paso, El Paso Sand would not have been vicariously liable for the alleged negligence of Llamas under the "statutory employee" theory.

■ Moreover, in this case, the oversize permit, although it did not technically expire until October 11, 1988, had no further legal significance since the only load authorized to be transported by the permit had been delivered and unloaded before the ac-

cident. An oversize permit was neither required nor obtained for his return trip to Tahoka. If, as now claimed in their brief but not in their pleadings, the Tirres are right that Llamas at the time of the accident was on his way back to Tahoka to pick up another "oversize load," El Paso Sand could not have utilized the old permit; a new oversize permit would have been required. Even under the "statutory employee rule," the employer is not liable for the negligent acts of the truck owner/operator while the latter is engaged in activity not requiring an ICC permit or other franchise, unless under the facts he is found to be an employee rather than an independent contractor. *Zimmerman v. Mathews Trucking Corp.*, 105 F.Supp. 57 (W.D.Ark.1952), *rev'd on other grounds*, 203 F.2d 864 (8th Cir.1953). Point of Error No. Two is overruled.

Under their third point, the Tirres claim that since it was established as a matter of law that El Paso Sand failed to exercise its control over Llamas in a reasonable manner, their motion for summary judgment should have been granted. We have previously concluded under the first point of error that since the relationship between El Paso Sand and Llamas was that of employer/independent contractor, El Paso Sand had neither the right nor the ability to control Llamas in the operation of his truck at the time of the accident. Under those circumstances, El Paso Sand owed no duty to the deceased and the driver of the other vehicle involved in the accident, to check Llamas' driving record and to determine whether he possessed the proper permits and licenses. It is ironic that had El Paso Sand made inquiries and instructed Llamas as Tirres now argues El Paso Sand should have done, Tirres would now be in a position to argue that such circumstances established that El Paso Sand was exerting the control of master/servant over Llamas. Point of Error No. Three is overruled.

The Tirres, in their final point, assert that they were entitled to a summary judgment since Llamas' alleged negligent acts were imputed to El Paso Sand as a matter of law. As was the case under Point of Error No. Two, the Tirres hinge this claim

of error on the fact that El Paso Sand by obtaining the oversize permit for the load transported to El Paso and off-loaded prior to the accident, had made Llamas its statutory employee. For the same reasons given in overruling the second point, we overrule Point of Error No. Four.

Judgment of the trial court is affirmed.