ENSERCH CORPORATION d/b/a Lone Star Gas Company, Petitioner,

v.

Mary Jean PARKER, Individually and as Representative of the Estate of Billy Joe Parker, Deceased, and as Next Friend of Daniel Edward Parker et al., Respondents.

No. C–9207.

Supreme Court of Texas.

June 6, 1990.

Rehearing Overruled Sept. 6, 1990.

Michael L. Knapek, Dallas, for petitioner.

Charles W. McGarry, Richard N. Countiss, Michael W. Huddleston, Kenneth J. Mighell, Dallas, for respondents.

## OPINION

SPEARS, Justice.

This is a wrongful death action in which the issue is the enforceability of an indemnity agreement. Billy Joe Parker and Preston Edward Watson were asphyxiated when a gasket blew out causing a valve to leak natural gas into the concrete manhole vault where they were working. Parker and Watson were employed by J.W. "Bill" Christie, Inc., a company servicing the pipeline owned and operated by Enserch Corporation through its division, Lone Star Gas Company. The trial court granted summary judgment in favor of Enserch against the plaintiffs on their wrongful death claim and in favor of Enserch on its indemnity claim against Christie. The court of appeals reversed the summary judgment and remanded the plaintiffs' wrongful death claim for trial. It also reversed and rendered the judgment on Enserch's indemnity claim against Christie. 776 S.W.2d 638. We affirm that part of the court of appeals' judgment which remands the wrongful death claim; however, we reverse that part

of the judgment involving the indemnity claim and affirm the judgment of the trial court.

Enserch contends that the trial court properly granted its motion for summary judgment in its entirety because (1) the claims against Enserch were barred as a matter of law by limitations; (2) Enserch owed no duty to Parker and Watson as employees of Christie since Christie was an independent contractor at the time of the deaths; and (3) Christie was required to indemnify Enserch pursuant to a written contract.

## STATUTE OF LIMITATIONS

Plaintiffs' cause of action is governed by a two-year statute of limitations. TEX. CIV.PRAC. & REM.CODE ANN. § 16.003 (Vernon 1986). The accident occurred, and the plaintiffs died, on February 8, 1984. Suit was filed on February 3, 1986, naming Lone Star Gas Company of Texas as a defendant. Lone Star Gas answered that it did not own, maintain, or operate any pipelines in the area where the accident occurred and that it had no working relationship with Christie. By verified pleadings it then asserted that a defect in the parties existed because Lone Star Gas was not liable for the relief sought by the plaintiffs.

On August 5, 1987, some eighteen months after filing suit, the plaintiffs filed an amended original petition naming Enserch Corporation d/b/a Lone Star Gas Company as a defendant. The plaintiffs alleged that Lone Star Gas was a wholly owned subsidiary of Enserch and that Enserch does business as Lone Star Gas. They also alleged that the subsidiary originally served with citation had a name deceptively similar to the trade name of its parent and that the proper defendant had not been prejudiced by the plaintiffs' mistake.

█ Texas courts have recognized a distinction between misnomer and misidentification. If the plaintiff merely misnames the correct defendant (misnomer), limitations is tolled and a subsequent amendment of the petition relates back to the date of

the original petition. If, however, the plaintiff is mistaken as to which of two defendants is the correct one and there is actually existing a corporation with the name of the erroneously named defendant (misidentification), then the plaintiff has sued the wrong party and limitations is not tolled. *Womack Machine Supply Co. v. Fannin Bank,* 499 S.W.2d 917, 919 (Tex. Civ.App.—Houston [14th Dist.] 1973), *rev'd on other grounds,* 504 S.W.2d 827 (Tex. 1974). The plaintiffs brought suit within the limitations period against Lone Star Gas Company of Texas, a separate and distinct legal entity from the proper corporate defendant, Enserch Corporation d/b/a Lone Star Gas Company. Therefore, the case before us is one of misidentification.

In *Continental Southern Lines, Inc. v. Hilland,* 528 S.W.2d 828 (Tex.1975), Hilland brought suit within the limitations period against Continental Trailways, Inc., a separate and distinct legal entity from the proper corporate defendant, Continental Southern Lines, Inc. More than two years after the accident, Hilland amended her petition to make Continental Southern a party defendant. Continental Southern then raised a limitations defense. We concluded that the bus companies made a conscious effort to make it appear that they were "Continental Trailways" and that Hilland "should be given ... an opportunity to prove that the Continental Southern Lines, Inc., was cognizant of the facts, was not misled, or placed at a disadvantage in obtaining relevant evidence to defend the suit." *Id.* at 831. Although *Hilland* was a case of misidentification, we held that if Hilland could prove that the proper defendant was not prejudiced by the mistake in pleading, then limitations would not operate to bar her suit. *Id.*

In *Howell v. Coca–Cola Bottling Co.,* 595 S.W.2d 208 (Tex.Civ.App.—Amarillo 1980, writ ref'd), Howell sued Coca–Cola Bottling Co., rather than the proper defendant, Coca–Cola Bottling Company of Lubbock, Inc. After Howell amended his petition to name Coca–Cola Bottling Co. of Lubbock as a defendant, the company asserted a limitations defense since it was not named as a defendant until after the two

year limitations period expired. Howell contended that limitations should not be tolled because the two corporations in question were "so intertwined that suit against the first corporation gave the second corporation notice of, and a reasonable opportunity to defend the case." *Id.* at 212. The court of appeals recognized this court's decision in *Hilland,* but held that in *Howell,* the proper defendant was not apprised of Howell's suit until some four years after the incident occurred. Consequently, the court held that suit was barred by the statute of limitations.

In *Palmer v. Enserch Corp.,* 728 S.W.2d 431 (Tex.App.—Austin 1987, writ ref'd n.r. e.), Palmer filed suit against multiple defendants, including Enserch Corporation. He amended his petition to name Enserch Exploration, Inc. as a party more than two years after originally filing suit. Enserch Exploration asserted limitations as a defense. The court held that diligence of the plaintiff in preventing the running of limitations is not the issue; rather, the issue is whether the legitimate purpose of the limitations statute would be served by its application under circumstances where no party is misled or placed at a disadvantage by the error in pleading. *Id.* at 434. The *Palmer* court determined that the purpose of limitations would not be served by its application. *See also Barnett v. Houston Natural Gas Co.,* 617 S.W.2d 305, 306 (Tex.Civ. App.—El Paso 1981, writ ref'd n.r.e.) (holding that critical issue is whether the party claimed to be responsible is in fact put on notice of the claim being made against it).

The summary judgment evidence shows that Enserch Corporation d/b/a Lone Star Gas Company has not been placed at a disadvantage in obtaining relevant evidence to defend this action. When Lone Star Gas Company of Texas, Inc., was served in this case, its legal department handled the utility litigation involving both Lone Star Gas Company of Texas, Inc., and Enserch Corporation d/b/a Lone Star Gas Company. This case was assigned to a senior attorney in the Enserch litigation department who was responsible for litigation involving both corporate entities. Although the peti-

tion named the wrong defendant in the style of the case, it correctly identified the proper defendant as the Lone Star Gas Company with authority over the gas pipeline in Richardson. The Enserch attorney noticed this pleading defect in the parties and determined that the correct party to be sued was Enserch Corporation d/b/a Lone Star Gas Company.

After this attorney filed his designation as attorney of record for Lone Star Gas Company of Texas, Inc., he was present for depositions in which Parker deposed five Christie employees having knowledge of relevant facts. Parker also deposed the Enserch attorney who admitted that Lone Star Gas Company of Texas, Inc., had been named as a party defendant in other lawsuits when, in fact, Enserch Corporation d/b/a Lone Star Gas Company was the target defendant. Additionally, the necessary business relationship exists between the two corporate defendants. *See Matthews Trucking Co., Inc. v. Smith*, 682 S.W.2d 237, 239 (Tex.1984). Both Lone Star Gas Company of Texas, Inc., and Enserch Corporation d/b/a Lone Star Gas Company were fully cognizant of the facts of the accident and could not have been misled as to the basis of the suit. We conclude that the instant case is analogous to *Hilland* and *Palmer*. A fact issue exists as to whether Enserch Corporation was prejudiced by the plaintiffs' error in pleading.

## DUTY OF CARE

The contract between Enserch and Christie provides that Christie is an independent contractor and is to perform and complete the pipeline work according to work orders provided by Lone Star Gas Company. Enserch contends that since Christie is an independent contractor, Enserch owes no duty of care to Parker and Watson to prevent them from being injured. However, the plaintiffs contend that, despite Christie's status as an independent contractor, Lone Star Gas retained control over Christie's work, which created a duty on the part of Lone Star Gas to exercise reasonable care in the exercise of

that control. *Redinger v. Living, Inc.*, 689 S.W.2d 415, 418 (Tex.1985).

As a general rule, an owner or occupier of land does not have a duty to see that an independent contractor performs work in a safe manner. *Abalos v. Oil Dev. Co.*, 544 S.W.2d 627, 631 (Tex.1976). However, in *Redinger*, we created an exception to this general rule, by holding that "[o]ne who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care." *Id.* at 418 (citing RESTATEMENT (SECOND) OF TORTS § 414 (1977)).

The contract between Christie and Enserch provides that Enserch "reserves the right to order work changes in the nature of additions, deletions, or modifications without invalidating this contract, and necessary corresponding equitable adjustments in the contract price and time of completion shall be made by the company." Enserch provided a book for Christie's employees which outlined the procedures to be followed while working on the pipeline, and Enserch representatives frequently visited the job site and supervised Christie's employees. We hold that these facts raise a question regarding whether Lone Star Gas retained the right to exercise control over Christie's work.

## THE INDEMNITY AGREEMENT

The indemnity agreement provides as follows:

[Christie] assumes entire responsibility and liability for any claim or actions based on or arising out of injuries, including death, **to persons** or damages to or destruction of property, sustained or alleged to have been sustained in connection with or to have arisen out of or incidental to the performance of this contract by [Christie], its agents and employees, and its subcontractors, their agents and employees, **regardless of whether such claims or actions are founded in whole or in part upon al-**

leged negligence of [Enserch], [Enserch's] representative, or the employees, agents, invitees, or licensees thereof. [Christie] further agrees to indemnify and hold harmless [Enserch] and its representatives, and the employees, agents, invitees and licensees thereof **in respect of any such matters** and agrees to defend any claim or suit or action brought against [Enserch], [Enserch's] representative, and employees, agents, invitees, and licensees thereof....

Enserch contends that the trial court properly granted its summary judgment motion because Christie had a duty to indemnify Enserch. Enserch reasons that the indemnity agreement contained an express assumption of liability which complied with article 8306, section 3(d) of the Texas Workers' Compensation Act.

### The Texas Workers' Compensation Bar

■ The Texas Workers' Compensation Act provides that a subscribing employer has no liability to reimburse or hold another person harmless for a judgment or settlement resulting from injury or death of an employee **"in the absence of a written agreement expressly assuming such liability."** TEX.REV.CIV.STAT.ANN. art. 8306, § 3(d) (Vernon Supp.1989) (emphasis added). This provision, commonly referred to as the Texas Workers' Compensation Bar, prohibits indemnity in a workers' compensation context unless one party *expressly agrees* to indemnify the other *in writing*. Therefore, Christie is not bound to indemnify Enserch unless the Christie–Enserch agreement is sufficient to overcome this bar. Our specific question focuses on whether the term "persons" in the indemnity provision includes Christie's employees.

The court of appeals held that the contract does not clearly state that Christie assumes liability for injuries to Christie's employees; rather, it only addresses Christie's liability for injuries to persons caused by Christie and its employees. The court of appeals observed that this language is similar to that held inadequate to overcome the workers' compensation bar in *Port Royal Dev. v. Braselton Constr. Co.,* 716 S.W.2d 630, 632 (Tex.App.—Corpus

Christi 1986, writ ref'd n.r.e.). There the subcontractor agreed to indemnify the contractor from liability "for or on account of injury to or death of person or persons ... occurring by reason of or arising out of the act or [negligence] of **SUBCONTRACTOR ... except the act or [negligence] of the CONTRACTOR,** in connection with performance of this Contract." (Emphasis added.) This agreement expressly stated that the subcontractor would not indemnify the contractor for the contractor's own negligence. The indemnity provision in the instant case contains no such limiting language.

Enserch asserts that the indemnity language in its contract with Christie is consistent with that in *Verson Allsteel Press Co. v. Carrier Corp.,* 718 S.W.2d 300 (Tex. App.—Tyler 1985, writ ref'd n.r.e.), in which similar language was held sufficient to overcome the workers' compensation bar. The indemnity language there read:

[Carrier] ... covenants to indemnify and hold harmless Verson ... from and against any and all loss, damage, expense, claims, suits or liability which Verson or any of its employees may sustain or incur ... for or by reason of any injury to or death of **any person or persons** or damage to any property, arising out of ... any claimed inadequate or insufficient safeguards or safety devices.

*Id.* at 301 (emphasis added). The trial court granted Carrier's motion for summary judgment on the ground that Verson's claim for indemnity was barred by article 8306, section 3(d) in that the contract language did not expressly assume liability as required by the Texas Workers' Compensation Act.

The *Verson* court of appeals reversed, however, and held that section 3(d) did not require that an indemnity agreement include language which specifically referred to the indemnitor's employees. Instead, the court of appeals observed that the intent of the parties is to be gleaned from examining all provisions of the contract in light of the circumstances surrounding its execution, and concluded that the indemnity language above constituted an express

written agreement by Carrier to indemnify Verson for a successful claim by a Carrier employee. Therefore, the indemnity language was held sufficient to overcome the workers' compensation bar.

As in *Verson,* the indemnity language in the contract between Enserch and Christie is sufficient to show that Christie expressly assumed liability for injuries to its own employees. Accordingly, the Texas Workers' Compensation Act does not bar Enserch's claim for indemnity.

### The Express Negligence Rule

By cross-point, Christie maintains that even if the Texas Workers' Compensation Act does not bar Enserch's claim for indemnity, the indemnity agreement is nevertheless unenforceable because it does not conform with the express negligence rule set out in *Ethyl Corp. v. Daniel Constr. Co.,* 725 S.W.2d 705 (Tex.1987). Under the express negligence rule, a party seeking indemnity from the consequences of its own negligence must express that intent in specific terms within the four corners of the contract. *Id.* at 708. Christie argues that because the actual reference to negligence is made in a separate sentence from the reference to indemnification, the clause conceals Enserch's true intent to be indemnified for its own negligence. Christie therefore asserts that the indemnity clause does not give fair notice that Christie is to indemnify Enserch for Enserch's own negligence and that the express negligence rule is not met when it must be inferred that negligence is intended to be covered.

This court in *Atlantic Richfield Co. v. Petroleum Personnel, Inc.,* 768 S.W.2d 724 (Tex.1989), recently considered language similar to that in the Christie–Enserch agreement. The indemnity clause in *Atlantic* provided that the indemnitor would indemnify the indemnitee for "any negligent act or omission of [the indemnitee], its officers, agents or employees...." *Id.* We held that this language met the requirements of the express negligence rule because it sufficiently defined the parties' intent. *Id.* at 726. *See also B–F–W*

*Constr. Co. v. Garza,* 748 S.W.2d 611, 613 (Tex.App.—Fort Worth 1988, no writ) (indemnity language requiring subcontractor to indemnify contractor "regardless of any cause or of any concurrent or contributing fault or negligence of contractor" met express negligence rule).

In the Christie–Enserch agreement, the indemnity clause provides that Christie will indemnify Enserch for any claims "regardless of whether such claims are founded in whole or in part upon alleged negligence of [Enserch]...." It also states that Christie "further agrees to indemnify and hold harmless [Enserch] ... in respect to **any such matters**...." (emphasis added). An indemnity agreement need not be confined to one sentence. It is clear that "any such matters" refers to the claims or actions described in the first sentence and that the contract as a whole is sufficient to define the parties' intent that Christie indemnify Enserch for the consequences of Enserch's own negligence.

### The "Conspicuous" Requirement

By cross-point, Christie also maintains that the indemnity agreement is unenforceable because it is not sufficiently conspicuous. Although the court of appeals held that Christie waived this argument, the record shows that Christie made this argument in its response to Enserch's motion for summary judgment in the trial court and this argument was preserved in the court of appeals. Therefore, Christie did not waive it, and we will address this argument.

Christie relies on *K & S Oil Well Serv., Inc. v. Cabot Corp.,* 491 S.W.2d 733, 737–38 (Tex.Civ.App.—Corpus Christi 1973, writ ref'd n.r.e.), where the court required that an indemnity agreement be conspicuous in order to provide "fair notice" and to prevent an obvious injustice. The indemnity provision in *K & S Oil* was hidden, located on the reverse side of a sales order under the heading "Terms and Conditions." It was surrounded by completely unrelated terms in a paragraph entitled "Warranty." Accordingly, the court held, as a matter of law, that the indemnity provision was not

conspicuous enough to give fair notice to the indemnitor.

By contrast, the contract language in *Goodyear Tire and Rubber Co. v. Jefferson Constr. Co.*, 565 S.W.2d 916 (Tex. 1978), specifically referred to the "hold harmless" provision on the reverse side. On the front of each page in large red type was language that read: "This purchase order is expressly made subject to, and your acceptance is strictly limited to, the terms and conditions stated herein, **including the terms and conditions stated on the reverse side hereof.**" *Id.* at 920. We held that the indemnity provision in *Goodyear* was conspicuous enough to give fair notice of its existence. *Id.*

In *Rourke v. Garza*, 511 S.W.2d 331 (Tex.Civ.App.—Houston [1st Dist.] 1974), *aff'd*, 530 S.W.2d 794 (Tex.1975), the court of appeals determined that indemnity provisions appearing on the back side of a delivery order were not so conspicuous as to give fair notice of the existence of an indemnity agreement. *Id.*, 511 S.W.2d at 344. That court also refused to enforce indemnity language in *Safway Scaffold Co. v. Safway Steel Prod., Inc.*, 570 S.W.2d 225 (Tex.Civ.App.—Houston [1st Dist.] 1978, writ ref'd n.r.e.). The *Safway* indemnity language appeared on the back of a rental form and was surrounded by unrelated terms in small and light type. Therefore, the court held that the indemnity provision was not conspicuous and was unenforceable. *Id.* at 228.

The entire contract between Enserch and Christie consists of one page; the indemnity language is on the front side of the contract and is not hidden under a separate heading. The exculpatory language and the indemnity language, although contained in separate sentences, appear together in the same paragraph and the indemnity language is not surrounded by completely unrelated terms. Consequently, the indemnity language is sufficiently conspicuous to afford "fair notice" of its existence.

The judgment of the court of appeals is affirmed in part and reversed in part. We affirm that portion of the court of appeals'

judgment which remands the wrongful death claim. We reverse that portion of the court of appeals' judgment involving the indemnity claim and affirm the judgment of the trial court awarding Enserch indemnity against Christie.

DOGGETT, J., not sitting.