Horacio HERNANDEZ Plaintiff,

v.

BIG 4, INC., et al.   Defendants.

No. CIV.A.G–02–298.

United States District Court,
S.D. Texas,
Galveston Division.

Jan. 9, 2003.

Mance Michael Park, Huntsville, TX, Andrew T McKinney, IV, McKinney & Cooper LLP, Houston, TX, for Horacio Hernandez, plaintiff.

Rayborn C Johnson, Jr, Montgomery, TX, for Big 4, Inc., defendant.

Keith Edward Coulter, Andrews Myers et al, Houston, TX, for David E. Harvey Builders, Inc., defendant.

Steve Martin Williard, Meyer Knight and Williams, Houston, TX, Steve Martin Williard, The Williard Law Firm, Houston, TX, for Mickey S. Palmer, defendant.

Roger D. Kirstein, Langley & Banack, San Antonio, TX, for Service Professionals, Inc.

## ORDER DENYING DEFENDANT AND CROSS–PLAINTIFF DAVID E. HARVEY BUILDERS, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT

KENT, District Judge.

Plaintiff Horacio Hernandez brings this personal injury action seeking damages from Defendant and Cross–Plaintiff David E. Harvey Builders ("Harvey") and Defendant and Cross–Defendant Big 4 Erectors, L.P. ("Big 4"), amongst others. Now before the Court is Harvey's Motion for Partial Summary Judgment, which seeks a declaration that Big 4 is contractually obligated to defend Harvey in the underlying personal injury action. Further, Harvey requests the Court to award reasonable attorney fees to Harvey for the costs it incurred in prosecuting this cross-claim against Big 4. After carefully and thoughtfully reviewing the Motion, the Response thereto, the summary judgment evidence and the applicable law, the Court concludes that, for the reasons articulated below, Harvey's Motion for Partial Summary Judgment must be **DENIED**.

### I. BACKGROUND

Horacio Hernandez was injured on January 30, 2002, at a construction site ("the Project") located in Houston, Texas. Harvey was the general contractor and overseer of the Project. Harvey contracted out the erection and installation of all structural steel at the Project to Big 4. Big 4 then contracted out portions of its con-

tract to other subcontractors. Hernandez apparently was an employee of a subcontractor that Big 4 contracted with in order to complete the erection of the structural steel at the Project. While Hernandez was in the course of erecting structural steel at the Project, he fell and injured himself-which is the basis for the underlying personal injury action before the Court.

■ Harvey's Motion is based solely upon the contract ("Contract") between it and Big 4, signed on August 27, 2001, for the erection of all structural steel at the Project.[1] Harvey seeks a declaration that Hernandez's claims fall within the scope of certain indemnity provisions contained in the Contract; and therefore, that Big 4 is obligated to defend Harvey regardless of Big 4's fault. The relevant Contract provision, section 7(b) titled "Additional Indemnity," states:

> Subcontractors shall defend, indemnify and hold harmless Contractor, Contractor's Surety, if any, Owner, and Architecht (and their officers, directors, shareholders, agents and employees) (hereinafter collectively referred to as "indemnified parties") from and against any and all claims, causes of action, lawsuits, judgments, and liability of every kind, including all expenses of litigation, court costs, and attorneys' fees, for injury to or death of any person (including without limitation, Subcontractor's employees) and for damages to any property, arising out of or relating to or in connection with the operations, performance, or acts of omissions of Subcontractor (including all employees, sub-subcontractors, suppliers and others for

whom subcontractor is responsible), or the work performed or to be performed by Subcontractor. *Subcontractor's above indemnity obligation* is limited to the extent such injury or damage is caused in whole or in part by negligent acts or omissions of Subcontractor. *Subcontractor's above duty to defend* extends to such injury or damage caused by the negligence of an indemnified party, including the sole negligence of an indemnified party; provided however, without relieving Subcontractor of its obligations hereunder, any of the indemnified parties, at their election, may defend or participate in the defense of any claim to which Subcontractor's duty to defend extends.

(emphasis added). The Parties agree that this clause controls the resolution of this Partial Summary Judgment. Harvey contends that section 7(b) of the Contract clearly and unambiguously requires Big 4 to defend Harvey from any claims relating to Big 4's steel erection operations (Hernandez's action), regardless of whether Big 4 was actually negligent or not. Harvey contrasts the duty to defend obligation (3rd sentence of section 7(b)) with the more limited duty to indemnify obligation (2nd sentence of section 7(b)), which obligates Big 4 to only indemnify other Parties for the proportion of fault that Big 4 attributed to Hernandez's injury. Harvey contends that the two separate duties are not inconsistent, but rather carefully drafted to fulfill the Parties intentions. Harvey asserts that Big 4's interpretation of the Contract would render the third clause of section 7(b) meaningless, which is contrary

---

1. Harvey also submitted the affidavit of Ron Murray, who is the Vice President of David E. Harvey Builders, Inc. The affidavit purported to explain the intent of the Parties in signing the Contract. However, such affidavit constitutes inadmissible parol evidence of the Par-

ties' intentions as to the effect of the Contract indemnity provisions. *See Nat'l Union Fire Ins.Co. v. CBI Indus., Inc.,* 907 S.W.2d 517, 520 (Tex.1995). Accordingly, the Court did not consider the affidavit in coming to its conclusion.

to the rule of construction that assumes the Parties intended to give effect to every clause.

Big 4 argues that section 7(b) is not enforceable as a matter of law because the cited provision is internally contradictory, and thus, ambiguous; hence, it presents a fact question. Because of this alleged internal contradiction, Big 4 urges the Court to employ secondary rules of construction. Big 4 cites the common rule that when there is an irreconcilable conflict between two clauses in a contract, the first is to be given effect. Thus, Big 4 contends that its duty to defend should be based upon its relative fault, consistent with its indemnity obligation. With these facts and arguments in mind, the Court now turns to the task of interpreting the Contract and applying the applicable law.

## II. ANALYSIS

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). When one party moves for summary judgment, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Issues of material fact are "genuine" only if they require resolution by a trier of fact. *See id.* at 248, 106 S.Ct. at 2510. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. Only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgment. *See id.* at 247–48, 106 S.Ct. at 2510. Nevertheless, if

the evidence is such that a reasonable factfinder could find in favor of the nonmoving party, summary judgment should not be granted. *See id.; see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Dixon v. State Farm Fire & Cas. Co.,* 799 F.Supp. 691 (S.D.Tex. 1992) (noting that summary judgment is inappropriate if the evidence could lead to different factual findings and conclusions). Determining credibility, weighing evidence, and drawing reasonable inferences are left to the trier of fact. *See Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513.

In Diversity cases, as this one, state law rules of contract construction govern the interpretation of the Contract. *See Amica Mut. Ins. Co. v. Moak,* 55 F.3d 1093, 1095 (5th Cir.1995). The Court and the Parties agree that Texas law must be applied in interpreting this Contract. In construing contracts, the Court will examine the contract as a whole in an attempt to effectuate the written articulation of the parties' intent. *See Coker v. Coker,* 650 S.W.2d 391, 393 (Tex.1983). If the contract provision at issue can be given a "certain or definite legal meaning or interpretation, then it is not ambiguous and the court will construe the contract as a matter of law." *Id.* "The mere disagreement of the parties upon the meanings of contract terms will not transform the issue of law into an issue of fact." *D.E.W., Inc. v. Local 93, Laborers' Int'l Union of N. Am.,* 957 F.2d 196, 199 (5th Cir.1992). However, a contract is ambiguous if a provision is reasonably susceptible to more than one meaning, or if its meaning is uncertain. *See Coker,* 650 S.W.2d at 393; *see also Dallas Bank & Trust Co. v. Frigiking, Inc.,* 692 S.W.2d 163, 166 (Tex.App.Dallas 1985, writ ref'd n.r.e.) ("A contract is only ambiguous when, after applying proper rules of interpretation to an instrument, it

remains uncertain which one of two meanings is the intended one."). The Court first determines as a matter of law if the contract is indeed ambiguous, and if it is, the question of the parties' intent becomes a fact question for the trier of fact to decide. *See Coker*, 650 S.W.2d at 394.

Indemnity agreements, even those agreements that require a party to indemnify another party despite that the latter is solely responsible, are enforceable under Texas law. *See Riley v. Champion Int'l Corp.*, 973 F.Supp. 634, 649 (E.D.Tex. 1997) (citing *Allright, Inc. v. Elledge*, 515 S.W.2d 266, 267 (Tex.1974)). A court may only enforce such agreements if two specific "fair notice" requirements, which serve to ensure that indemnity and release provisions are equitable, are satisfied. *See Dresser Indus. v. Page Petroleum, Inc.*, 853 S.W.2d 505, 508 (Tex.1993). These provisions are the express negligence doctrine and the conspicuousness requirement. *See Enserch Corp. v. Parker*, 794 S.W.2d 2, 8 (Tex.1990). The Parties do not dispute that Contract section 7(b) is conspicuously written. Rather, Big 4 contends that section 7(b) fails to meet the express negligence test under Texas law. Whether this Contract satisfies the express negligence test is a question of law for this Court to decide. *See Dresser*, 853 S.W.2d at 509; *see also Quorum Health Res., L.L.C. v. Maverick County Hosp. Dist.*, 308 F.3d 451, 459 (5th Cir.2002).

The express negligence doctrine requires a party seeking indemnity from the consequences of its own negligence to express that intent in specific terms within the four corners of the contract. *See Enserch Corp.*, 794 S.W.2d at 8. Generally, the express negligence doctrine is satisfied when the intent of the parties is (1) clearly expressed; (2) set forth within the four corners of the agreement; and (3) stated in specific terms. *See Ethyl Corp. v. Dan-*

*iel Constr. Corp.*, 725 S.W.2d 705, 708 (Tex.1987). The Texas Supreme Court explained the purpose of the express negligence doctrine when adopting it, stating:

As we have moved closer to the express negligence doctrine, the scriveners of indemnity agreements have devised novel ways of writing provisions which fail to expressly state the true intent of those provisions. The intent of the scriveners is to indemnify the indemnitee for its negligence, yet be just ambiguous enough to conceal that intent from the indemnitor. The results has been a plethora of lawsuits to construe those ambiguous contracts. We hold the better policy is to cut through the ambiguity of those provisions and adopt the express negligence doctrine.

*Id.*, 725 S.W.2d at 707–08. After careful consideration of Contract section 7(b), the applicable law concerning the express negligence doctrine, and the Parties' excellent briefs, the Court concludes that Contract section 7(b) is not sufficiently clear to meet the express negligence test.

Contract section 7(b) contains three sentences. The first sentence is a very broad obligation stating that Subcontractor (Big 4 in this case) "shall defend, indemnify and hold harmless Contractor [Harvey] . . . from and against any and all claims . . . including all expenses of litigation, court costs and, attorneys' fees . . . relating to or in connection with the operations, performance, or acts of Subcontractor . . . ." The first sentence is followed by two sentences that appear to further define the specific duties that Big 4 owes Harvey. The second sentence deals exclusively with Big 4's "above indemnity obligation," stating that it is "limited to the extent such injury or damage is caused in whole or in party by negligent acts or omissions of Subcontractor." Essentially, Big 4 is obligated to indemnify Harvey only for the percentage

of fault that is attributed to Big 4. However, the third sentence, which defines the "Subcontractor's above duty to defend," appears to be much broader. It states that such duty extends to "damage caused by the negligence of an indemnified party, including the *sole negligence of an indemnified party*." (emphasis added). Harvey contends that these three sentence do not contradict each other; rather, Harvey argues that the Parties' intent was to require Big 4 to pay for all litigation costs regardless of fault, and then to apportion any judgment or settlement upon proportionate responsibility.

The Court concludes that after reviewing these three sentences, individually and as a whole, and against the broader backdrop of the entire contract, section 7(b)'s meaning is uncertain and ambiguous, and thus, section 7(b) does not meet Texas's express negligence test. The specific language in the third sentence that troubles the Court is that Big 4 must defend Harvey, even if the accident is a result of "the sole negligence of an indemnified party [presumably Harvey for analysis purposes]." If the Court assumes Harvey was solely negligent for Hernandez's injuries, Harvey could not become an "indemnified party" because the second sentence of section 7(b) only requires Big 4 to indemnify a party for the percentage of fault attributable to Big 4. Hence, if Big 4 was attributed 0% fault because Harvey was 100% at fault, Harvey would not be indemnified. Thus, the language in section 7(b)'s third sentence, "including the sole negligence of an indemnified party," can be reasonably read as contradictory with the second sentence-because Harvey cannot be both solely negligent *and* an indemnified party at the same time.

On the other hand, the first sentence of section 7(b) quotes "indemnified parties" for the purpose of defining "indemnified parties" as all parties other than Big 4. The third sentence language that concerns the Court refers to the "sole negligence of an indemnified party." There is a reasonable argument that the aforementioned language does not mean an indemnified party in fact, but rather that the term "indemnified parties" is used solely to identify any party other than Big 4. Under this reading, Harvey could be solely at fault *and* an "indemnified party" because "indemnified party" is used only to refer to Harvey. However, "indemnified parties" in the first sentence of section 7(b) is not capitalized, nor was "indemnified party" in sentence three capitalized. Therefore, "indemnified party" in the last sentence could be used solely to define Harvey, or it could carry its actual meaning. Given that the Contract was drafted by Harvey, Harvey was charged with the responsibility of ensuring that the Contract's meaning was clear, especially on this particular point, in light of the elevated level of clarity that the express negligence doctrine demands.

▇▇ Consequently, the Court finds that the duty to defend under Contract section 7(b) is uncertain and ambiguous, and as a result, the interpretation of section 7(b) must be decided by a fact finder. *See Coker v. Coker*, 650 S.W.2d at 394. The express negligence doctrine demands that an indemnity clause requiring indemnification of a party for its own negligence, especially for its sole negligence, be crystal clear. The relevant provision appears to be artfully drafted to confuse and deceive the Parties regarding their obligations, which is exactly what the Texas Supreme Court intended to prevent by its adoption of the express negligence doctrine. *See Ethyl*, 725 S.W.2d at 708. If a party wishes to be indemnified for its own negligence, a party must draft an absolutely clear written provision that is doubt-free to comply with Texas law. The Court is well

aware of the real world lack of bargaining power between subcontractors and general contractors. The express negligence doctrine ensures that subcontractors are at least aware of their indemnity obligations, even if such obligations were not truly bargained for, so that they can, at least theoretically, incorporate such obligations into the bid valuation analysis.

The Court again compliments the Parties' counsel for their excellent briefing. The Court enjoys seeing lawyers of this caliber before it. Despite good arguments from each Party, the Court concludes that Contract section 7(b) is ambiguous, and consequently, insufficiently clear to meet Texas's express negligence doctrine. Accordingly, for the reasons articulated above, the Court respectfully **DENIES** Defendant and Cross–Plaintiff David E. Harvey Builders, Inc.'s Motion for Partial Summary Judgment. The Parties are to bear their own taxable costs, expenses and attorneys' fees incurred herein to date.

**IT IS SO ORDERED.**