**Affirm and Opinion Filed August 2, 2022**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-20-00848-CV**

**A2Z TRANSPORTATION CO., INC., Appellant**
**V.**
**RONALD THOMAS, Appellee**

**On Appeal from the 68th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-18-19059**

## MEMORANDUM OPINION

Before Justices Myers, Osborne, and Nowell
Opinion by Justice Osborne

In this premises liability case, the trial court rendered judgment for

plaintiff/appellee Ronald Thomas after a bench trial. In seven issues, Appellant A2Z

Transportation Co., Inc. ("Transportation") contends the trial court's judgment is

void because it was never served with process, or in the alternative, that the pleadings

and the evidence are insufficient to support the trial court's judgment. We decide

these issues against Transportation and affirm the trial court's judgment.

### BACKGROUND

In his operative petition, Thomas alleged he was injured on January 6, 2017,

when he slipped on ice at his workplace. He alleged his employer knew or should

have known about the improperly treated ice and failed to take any steps to warn him of the danger. He offered evidence at trial that he suffered two breaks in his ankle as a result of his fall at work and a subsequent fall in the parking lot of the hospital where he went to seek treatment later on the same day.

Thomas named "A2Z Limos, Inc." ("Limos") as the defendant and served process on that entity by serving "its registered agent Shahida Ejaz" at an address on Merriman Parkway in Dallas on May 21, 2019. Defendant's discovery responses, verified by "A2Z Transportation principal officer" Jimmy Chaudhry, included the following "general objection":

> A2Z LIMOS, INC. ceased to be a Texas entity in 1989 and is not a property [sic] named defendant herein. Plaintiff was a contract driver for A2Z Transportation, Inc.[1] who leases the premises from JC Goodman Investment, Inc. the owner of the property. The following responses are made as if directed to the proper party, A2Z Transportation, Inc.

Further, in response to the request to describe "how the injury-producing events" occurred, "Defendant" stated, "Plaintiff was a driver for A2Z Transportation, Inc. who leases the premises from JC Goodman Investment, Inc. the owner of the property. The entity named as defendant does not exist. A2Z Limo was used by Shahida Ejaz long ago as an operating entity."

Neither party acted on the information in this disclosure. Thomas did not amend his petition or request service of process on A2Z Transportation Co., Inc.,

---

[1] The written trial amendment to the pleadings and subsequent documents, including the appellate briefing, add "Co." to appellant's name.

and Limos did not move for summary judgment or seek other relief on the ground that it was not Thomas's employer and was not properly named as a defendant. Instead, the parties conducted discovery and announced ready for trial.

During opening statements in the trial before the court, the trial court asked:

THE COURT: Mr. Carney [Defense Counsel], let me just ask this. So, this building they're at, who owned the building, was it your client, or somebody else owned the building?

MR. CARNEY: Well, that's an important question, Your Honor. Because we have answered—we have told the Plaintiffs that the entity they've sued has not been in existence since 1989, and that we identified who the employer was, and who leased the building, and who owned the building that his employer leased. So even though we've identified the proper parties and informed them of the nonexistence of the named party they sued, they never modified their pleadings. So there is no—there is no A2Z Limos, Inc., not since 1989.

THE COURT: Okay. Then why didn't you move for summary judgment on this?

MR. CARNEY: Your Honor, because I honestly thought they would, you know, modify their pleadings. I invited it to them. I told them I'd accept service, just fix it. I told them who the right parties were. So as far as summary judgment—

THE COURT: I was just curious. [Plaintiff's counsel], is that correct? Is this the wrong entity? Where did your client get his paychecks from?

MR. PEREZ [Plaintiff's Counsel]: Your Honor, we would respectfully —actually let me answer that question for you. One moment, Your Honor, let me grab my client's paycheck.[2] One moment. However, we would say that this isn't [the] wrong entity altogether, we'd say that this is a misnomer. And if we could, Your Honor, we would like to actually do a trial amendment that corrects the name of the Defendant. It clearly hasn't prejudiced Defendant, as they are here today. . . .

---

[2] There is no paycheck in the record, nor any information about a payor.

THE COURT: . . . So, Mr. Carney, did you say that your client—let's just forget the name of the company for a second. Did your client own this building where the fall allegedly happened, or was it owned by somebody else? Like a separate entity?

MR. CARNEY: Just by way of background, this has been a family business that was started by Mr. Chaudhry's father and mother. There are family entities that own the building, but it's a different ownership than his business which leases the building to operate his transportation company.

Thomas called Chaudhry as his first witness, and inquired, "So you're the owner of A2Z Limos, right? Or A2Z Transportation, right?" Chaudhry responded, "Yes, sir." Chaudhry also testified that the company's website was "A2Z Limos.com." He testified that the business was operated from premises on Langford Street in downtown Dallas. Although Chaudhry testified at some length about his company, its regular business practices and procedures, Thomas's work schedule and duties, the physical layout of the business premises, and the events on the day Thomas fell, he was not asked further questions by either counsel about the ownership or control of the corporate entities or the premises. Chaudhry also testified he received a text message from Thomas on the day of his injury stating "Open door/I think I broke my An[k]le/It hurts bad/Man it popped Loud/Man . . . Real Loud Pop."

Thomas testified about his work, his fall, and his subsequent medical treatment. On the day of his fall, he was driving his employer's shuttle van to transport flight crews between the airport and local hotels. In between his assigned trips, he went to the break room at "the shop." His normal procedure, which he

followed on that day, was to call or text Chaudhry to open the locked door for entry. Thomas testified there was "a little hill" from the parking lot to the door, and "that's where I slipped at right there. It was slippery right there. You know, ice right there. It was slippery right there. And I reached for the doorknob, that's when I slipped." Thomas then texted Chaudry that he had fallen, and because of the pain, called an ambulance.

Thomas explained that although an ambulance responded to his call, he refused transport to a hospital when the paramedics told him it was probably just a sprain. But when he tried to walk into the break room after the ambulance left, the pain worsened and his ankle swelled and "turned purple." Thomas then decided to drive himself to a nearby emergency room. Medical records from the hospital reflected Thomas's report that "he slipped while at work tonight; he then drove here and fell again in the parking lot." An X-ray revealed two fractures in Thomas's ankle.[3] Both Thomas and one of his medical providers testified about the extent of his injuries and difficulties in recovery.

At the close of Thomas's case, his counsel moved "to make a trial amendment to amend our pleadings to A2Z Transportation, Incorporated. That was misnamed as A2Z Limos, Incorporated." The trial court overruled defense counsel's objection and allowed the amendment. Thomas also filed a written motion, granted by the trial

---

[3] The X-ray report states, "There is an acute fracture through the medial malleolus with mild displacement. There is also an oblique fracture [of] the distal fibula."

court by written order, to "change the style and caption" of the suit from "'Ronald Thomas v. A2Z Limos, Inc.' to 'Ronald Thomas v. A2Z Transportation, Co., Inc.'"

There were numerous factual disputes the trial court was required to resolve in order to render judgment. Thomas testified that he was in between driving assignments when he attempted to enter the business premises and fell; Chaudhry testified Thomas had finished his trips for the day and should not have been on the premises. Thomas testified that Chaudhry was on the premises when he fell and spoke to an ambulance crew that was called; Chaudhry testified he had left for the day and did not see the ambulance or speak to any paramedic. Thomas testified about "[v]ery, very cold" weather conditions and "black ice" on the premises; Chaudhry testified that when he left the premises around 6:00 p.m. that day, there was "no ice or no sleet or nothing" on the ground. Thomas and Chaudhry also disagreed about the location and use of cameras on the premises. Chaudhry conceded that Thomas fell and was injured somewhere, but not "on my property."

At the close of the evidence, the trial court noted there were no weather reports, ambulance reports, or videos in evidence to support or refute either party's testimony, and no experts testified about which of the two falls caused Thomas's injuries. The court continued:

> And so, I basically have two people's stories, and then circumstantial evidence. You know, the evidence that I found, you know, most persuasive, is the fact that this was reported the day of. There were text messages the day of. There [were] medical reports the day of. I don't really see how else this would have happened. There hasn't been any

–6–

credible story given about what—how else he would have fallen. And the fact that there's text messages and medical records the day of corroborates the story. . . . I'm going to rule in favor of the Plaintiff on this.

The trial court rendered judgment for Thomas for past medical expenses, past and future pain and suffering, past and future physical impairment, and past and future disfigurement for a total recovery of $216,135.87. The trial court also made findings of fact and conclusions of law.

Transportation's motion for new trial, asserting that only Limos, not Transportation, was served with process within the limitations period, was heard but was overruled by operation of law. This appeal followed.

## ISSUES AND STANDARDS OF REVIEW

Transportation's seven issues arise from its complaint that it was not served with process. Transportation contends the trial court erred by rendering judgment for Thomas because: (1) the final judgment is void due to lack of service; (2) the trial court abused its discretion by allowing Thomas to amend his pleadings; (3) there are no pleadings to support the judgment; (4) there is no or insufficient evidence that Transportation announced ready for trial; (5) there is no or insufficient evidence that Thomas was Transportation's employee; (6) there is no or insufficient evidence that Thomas was injured at 2341 Langford Street while working there, and (7) there is no or insufficient evidence to support the trial court's conclusion that Transportation controlled the premises at 2341 Langford Street.

–7–

We do not discuss the applicable standards of review in detail; the parties have stated them correctly. We review jurisdictional questions de novo and factual findings about jurisdiction for sufficiency of the supporting evidence. *See BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). We review the trial court's decision to permit or deny a trial amendment for abuse of discretion. *State Bar of Tex. v. Kilpatrick*, 874 S.W.2d 656, 658 (Tex. 1994).

"A trial court's findings are reviewable for legal and factual sufficiency of the evidence by the same standards that are applied in reviewing evidence supporting a jury's answer." *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994). When an appellant challenges the legal sufficiency of an adverse finding on which he did not have the burden of proof at trial, he must demonstrate there is no evidence to support the adverse finding. *Sheetz v. Slaughter*, 503 S.W.3d 495, 502 (Tex. App.—Dallas 2016, no pet.). A trial court's findings of fact "may be overturned only if they are so against the great weight and preponderance of the evidence as to be clearly wrong and unjust." *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996). In a bench trial, the trial court, as factfinder, is the sole judge of the credibility of the witnesses. *Sheetz*, 503 S.W.3d at 502. As long as the evidence falls "within the zone of reasonable disagreement," we will not substitute our judgment for that of the fact-finder. *Id.*

## DISCUSSION

Transportation's first three issues address its complaints about lack of service and sufficiency of the pleadings, all arising from Thomas's original pleading naming

–8–

Limos as defendant and service of the suit on Limos instead of Transportation. The remaining four issues, argued together, challenge the sufficiency of the evidence.

## 1. Pleadings and service

In its first issue, Transportation contends the final judgment is void because Transportation was not served and did not appear. Ordinarily, a judgment cannot be rendered against one who was neither named nor served as a party defendant. *Werner v. Colwell,* 909 S.W.2d 866, 869 (Tex. 1995); TEX. R. CIV. P. 124 (no judgment without service). This is also true for a party who becomes aware of the proceedings without proper service of process. *Ross v. Nat'l Ctr. for the Employment of the Disabled,* 197 S.W.3d 795, 797 (Tex. 2006) (per curiam).

However, an exception exists when a person waives service of process by making a general appearance before the court. *Werner,* 909 S.W.2d at 869–70; TEX. R. CIV. P. 124; *see also Dolenz v. Vail*, 143 S.W.3d 515, 517–18 (Tex. App.—Dallas 2004, pet. denied) (court examines "the nature and quality of the party's activities" to determine whether a party has made a voluntary general appearance). When a party generally appears, the trial court can exercise jurisdiction over the party without violating the party's due process rights. *See Law Offices of Lin & Assocs. v. Deng*, No. 14-07-00729-CV, 2009 WL 36480, at *2 (Tex. App.—Houston [14th Dist.] Jan. 8, 2009, no pet.) (mem. op.). Here, Transportation answered discovery and fully participated in trial in accordance with its representation that it was the proper party and that Limos did not exist. Even if Transportation had contested the

lack of service at trial, an appearance to contest lack of service and subsequent participation in the proceedings constitutes a general appearance. *Morales v. Morales,* 195 S.W.3d 188, 191 (Tex. App.—San Antonio 2006, pet. denied); *Houston Crushed Concrete, Inc. v. Concrete Recycling Corp.,* 879 S.W.2d 258, 260–61 (Tex. App.—Houston [14th Dist.] 1994, no writ). We decide Transportation's first issue against it.

In its second issue, Transportation contends that the trial court abused its discretion by permitting Thomas to amend his pleadings without hearing evidence to determine whether there had been a misnomer or a misidentification. Limitations on Thomas's claim expired on January 6, 2019, two years after his injury. TEX. CIV. PRAC. & REM. CODE § 16.003 (suit for personal injury must be filed not later than two years after the day the cause of action accrues). Although Thomas filed suit against Limos within the limitations period, he did not file his "Motion to Change the Case Style" to Transportation until June 17, 2020, which was granted by the court on June 19, 2020. Thomas contends his suit was timely because his motion to change the case style relates back to the date of his original petition. Transportation argues there is no relation back because Thomas named the wrong defendant. In sum, the parties dispute whether Thomas sued the correct defendant under the wrong name—a misnomer—or erroneously named one of two existing corporations, a misidentification.

A misnomer would toll limitations; a misidentification in most circumstances would not. *Cortinas v. Wilson*, 851 S.W.2d 324, 326–27 (Tex. App.—Dallas 1993, no writ). As explained by the supreme court in *Enserch Corp. v. Parker*, 794 S.W.2d 2, 4–5 (Tex. 1990):

> Texas courts have recognized a distinction between misnomer and misidentification. If the plaintiff merely misnames the correct defendant (misnomer), limitations is tolled and a subsequent amendment of the petition relates back to the date of the original petition. If, however, the plaintiff is mistaken as to which of two defendants is the correct one and there is actually existing a corporation with the name of the erroneously named defendant (misidentification), then the plaintiff has sued the wrong party and limitations is not tolled.

This rule "applies even though the correct defendant may have known of the suit." *Matthews Trucking Co., Inc. v. Smith*, 682 S.W.2d 237, 239 (Tex. 1984).

Defense counsel at trial contended that Limos "has not been in existence since 1989" and Transportation answered discovery by stating that "[t]he named defendant ceased being a lawful Texas business entity more than 20 years ago," suggesting that the correct defendant was merely misnamed. But Transportation now requests that the Court take judicial notice of public records showing that Limos is an existing corporation. Transportation argues that Limos was served, appeared, and defended the lawsuit. That is, Transportation now argues there has been a misidentification rather than a misnomer.

There is a narrow exception to the rule that limitations is not tolled where there has been a misidentification. *Cortinas*, 851 S.W.2d at 327. "[A] plaintiff who misidentifies a defendant may escape the statute of limitations requirements by

–11–

proving that the defendant suffered no prejudice." *Id.* "[T]he issue is whether the legitimate purpose of the limitations statute would be served by its application under circumstances where no party is misled or placed at a disadvantage by the error in pleading." *Enserch Corp.*, 794 S.W.2d at 5. As we explained in *Cortinas*, "[p]rejudice is a relevant issue only when an intended corporate or business-entity defendant and the defendant actually named in the plaintiff's petition have a business relationship." *Cortinas*, 851 S.W.2d at 327. This exception "is rooted in the understandable confusion that occurs when a company does business and holds itself out to the public under a trade name." *Id.*

Although the exception is narrow, we conclude it applies here. *Cf. id.* (exception did not apply to misidentification of individual defendant). Transportation was not misled or placed at a disadvantage by the error in pleading. *See Enserch Corp.*, 794 S.W.2d at 6 (both named defendant and target defendant "were fully cognizant of the facts of the accident and could not have been misled as to the basis of the suit"). Transportation had knowledge of the incident through Chaudhry, who was identified in "defendant's" discovery responses as "the person in charge of this matter for A2Z Transportation" and "A2Z Transportation principal officer." Chaudhry verified the defendant's discovery responses, which included the statement that Limos "ceased to be a Texas entity in 1989" and informed Thomas that the responses were "made as if directed to the proper party, A2Z Transportation, Inc." Both at trial and at the hearing on Transportation's motion for new trial,

–12–

counsel represented that Transportation and Limos were owned by Chaudhry's family.

In addition, Chaudhry, who was Transportation's principal officer, testified in detail about the premises where Thomas was injured and the weather conditions on the day in question. He hired Thomas, and he served as the defendant's corporate representative at trial. *See Palmer v. Enserch Corp.*, 728 S.W.2d 431, 433 (Tex. App.—Austin 1987, writ ref'd n.r.e.) (limitations will not bar suit against the proper defendant "so long as the latter is cognizant of the facts, is not misled and is not placed at a disadvantage in obtaining the relevant evidence necessary for its defense"). Thomas testified that Chaudhry was on the premises when the accident occurred. Chaudhry denied being present that evening, but his testimony reflects that he saw Thomas's text message "about an hour, hour-and-a-half afterwards," and knew of Thomas's accident at the latest within "a couple days" when Thomas returned to the office to pick up a check.

Chaudhry testified in detail about the scheduling and recordkeeping for the business where Thomas worked. He identified and discussed the manifest for the day of Thomas's accident. He referred to the premises where he and Thomas worked as "my premises," and testified that "I don't think [Thomas fell] on my property." On this record, we conclude that Transportation was not misled or placed at a disadvantage by the error in Thomas's pleading. *See Enserch Corp.*, 794 S.W.2d at 5. We decide Transportation's second issue against it.

In its third issue, Transportation argues that there are no pleadings to support the judgment because Thomas "never filed a trial amendment." Transportation contends that Thomas's "Motion to Change the Case Style," granted in a written order by the trial court, changed only the petition's title, not its substance, and the substance of a pleading controls over its title. *See State Bar of Texas v. Heard*, 603 S.W.2d 829, 833 (Tex. 1980) (orig. proceeding). Pleadings are sufficient, however, if they provide "fair notice" to the opposing party of "the nature and basic issues of the controversy and what testimony will be relevant." *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 896–97 (Tex. 2000). Here, the nature and basic issues of the controversy—that Thomas slipped and fell at his workplace and asserted a cause of action for premises liability against his employer—were ascertainable from the petition's substance.

Transportation also relies on two exceptions to the rule that it is improper to render final judgment against a party because of a pleadings defect. *See Perez v. Kirk & Carrigan*, 822 S.W.2d 261, 268–69 (Tex. App.—Corpus Christi-Edinburg 1991, writ denied) (stating general rule). First, Transportation argues that an adverse judgment is proper if plaintiff has been given an opportunity to amend a pleading but fails to do so. *See Natividad v. Alexsis, Inc.*, 875 S.W.2d 695, 699 (Tex. 1994). In *Natividad*, however, the court addressed the question whether summary judgment based on a pleading deficiency was proper "if a party has had an opportunity by special exception to amend and fails to do so, or files a further defective pleading."

*Id.* Here, there was neither a summary judgment nor a special exception. Second, Transportation argues that an adverse judgment is proper where the pleadings affirmatively negate the plaintiff's claim. *See, e.g., Saenz v. Family Sec. Ins. Co.*, 786 S.W.2d 110, 111 (Tex. App.—San Antonio 1990, no writ). Transportation contends this exception applies because "the plaintiff's live pleadings establish that A2Z Limos, Inc. was plaintiff's employer and in control of the premises where he was injured, thereby negating any claim against A2Z Transportation Co., Inc. for the same injury." But as Thomas responds, the statement of facts and causes of action in the operative petition refer to the parties only as "Plaintiff" and "Defendant." *Cf. id.* (employee could not plan and execute fraud on his employer and be in furtherance of his employment, as a matter of law). We conclude that the pleadings adequately support the judgment. *See Heard*, 603 S.W.2d at 833; *Auld*, 34 S.W.3d at 896.

For these reasons, we decide Transportation's first three issues against it.

## 2. Sufficiency of the evidence

In its fourth issue, Transportation challenges the sufficiency of the evidence to support the trial court's recital that Transportation announced ready for trial. Transportation argues that defense counsel's announcement that he appeared for "the Defendant" was made only on behalf of Limos, not Transportation, and "there is nothing in the record to show that [Transportation] ever appeared for trial." For the reasons we have already discussed, we conclude Transportation appeared for trial. *See Enserch Corp.*, 794 S.W.2d at 5 (considering whether legitimate purpose of

–15–

limitations would be served under circumstances where no party is misled or placed at a disadvantage by error in pleading).

In its fifth, sixth, and seventh issues, Transportation challenges the sufficiency of the evidence to support the trial court's findings that Thomas was Transportation's employee, that Thomas was injured on January 6, 2017, at 2341 Langford Street while working there, and that Transportation controlled the premises at 2341 Langford Street. We conclude there was legally and factually sufficient evidence to support these findings and the trial court's conclusions of law based on those findings.

"[A]n employer has the same premises-liability duty to its employees as other landowners have to invitees on their premises." *Austin v. Kroger Texas, L.P.*, 465 S.W.3d 193, 201–02 (Tex. 2015). This duty is "a duty to make safe or warn against any concealed, unreasonably dangerous conditions of which the landowner is, or reasonably should be, aware but the invitee is not." *Id.* at 203. The trial court found and concluded, among other matters, that:

- Thomas was employed by Transportation and was an invitee on the Langford Street premises on the day in question. Transportation had control over the Langford Street premises.

- Thomas slipped and fell in an "ice-slush mixture" that had accumulated in front of the employee entrance where several employees had walked during the day. The ice and slush mixture was unreasonably dangerous. Transportation knew or should have known of the danger because of the length of time the condition existed and the opportunity to observe it by video.

- Thomas was injured and required surgery. He incurred past medical expenses and "will continue to suffer pain, suffering, and physical impairment into the future."

- Thomas met his burden to establish he suffered injuries as a proximate cause of Transportation's "failure to make safe the unreasonably dangerous condition."

Thomas offered evidence on each of these matters. He testified that it had been sleeting during the day, the weather was cold, and there was "black ice" at the entrance to his employer's business premises. He described his employer's premises in some detail. He testified that his employer could see the entrance through a camera every time an employee sought entry. He testified that he was in between trips for his employer and followed his usual practice of going to the break room until it was time for the next trip. He described his fall and his injuries. Chaudhry contradicted Thomas's version of events in many respects but supported it in others, most notably testifying in detail about Thomas's job responsibilities and schedule at what he referred to as "my premises" on Langford Street. The trial court, as the finder of fact, was required to weigh the evidence and was the sole judge of its credibility. *See Sheetz*, 503 S.W.3d at 502.

We conclude that the trial court's findings are not so against the great weight of the evidence as to be clearly wrong and unjust. *See Ortiz*, 917 S.W.2d at 772. We decide Transportation's fourth through seventh issues against it.

–17–

**CONCLUSION**

The trial court's judgment is affirmed.

/Leslie Osborne//

LESLIE OSBORNE

JUSTICE

200848f.p05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

A2Z TRANSPORTATION CO., INC., Appellant

No. 05-20-00848-CV     V.

RONALD THOMAS, Appellee

On Appeal from the 68th Judicial District Court, Dallas County, Texas Trial Court Cause No. DC-18-1059. Opinion delivered by Justice Osborne. Justices Myers and Nowell participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee Ronald Thomas recover his costs of this appeal from appellant A2Z Transportation Co., Inc.

Judgment entered this 2nd day of August, 2022.