Opinion issued August 15, 2019



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-17-00689-CV

———————————

### DIANE PEREZ AND RICKY PEREZ, Appellants

### V.

### GREATER HOUSTON TRANSPORTATION COMPANY D/B/A AND/OR A/K/A YELLOW CAB COMPANY AND/OR YELLOW CAB, AND DELWENDE NIKIEMA, Appellees

---

On Appeal from the 234th District Court
Harris County, Texas
Trial Court Case No. 2016-32437

---

### MEMORANDUM OPINION

Appellants Diane and Ricky Perez sued appellee Greater Houston

Transportation Company *d/b/a* and/or *a/k/a* Yellow Cab Company and/or Yellow

Cab (GHTC) for personal injuries Diane suffered in a collision with a cab driver,

asserting a cause of action for negligence under respondeat superior and joint-enterprise theories. The trial court granted no-evidence summary judgment in favor of GHTC and ordered that the Perezes take nothing by their claims against GHTC. In their sole issue on appeal, the Perezes assert that the trial court erred in granting summary judgment in favor of GHTC on their claim for negligence under a respondeat superior theory. Because we conclude that the Perezes presented evidence raising a fact question on the challenged elements of their claim, we reverse and remand.

## Background

Delwende Nikiema was driving a taxicab to pick up a passenger when he collided with Diane Perez's vehicle. The Perezes allege that Nikiema caused the crash after he ran a stop sign while speeding and that Diane sustained injuries as a result of the accident. GHTC owned the taxicab, and it held the taxicab's permit issued by the City of Houston. Nikiema leased the taxicab from GHTC through an "Independent Contractor License and Vehicle Lease Purchase Option Agreement."

The Perezes filed a personal injury suit against Nikiema and GHTC.[1] In their suit against GHTC, the Perezes alleged that the company was negligent due to inadequate training and policies for its drivers. They also alleged that GHTC was

---

[1] The Perezes nonsuited their claim against Nikiema following the trial court's granting of GHTC's no-evidence motion for summary judgment. Nikiema is not a party to this appeal.

2

liable for Nikiema's negligence under theories of respondeat superior and joint enterprise, among others.

GHTC filed a no-evidence and a traditional motion for summary judgment. In relevant part, it contended that the Perezes had no evidence to support their claim that GHTC was vicariously liable for Diane's injury under a theory of respondeat superior or joint-enterprise liability. GHTC asserted that Nikiema was not an employee of GHTC and that he was not acting within the course and scope of his "alleged" employment with GHTC at the time of the accident. GHTC's summary-judgment evidence included, among other documents, the independent contractor and vehicle lease agreement between Nikiema and GHTC and the affidavit of Ed Kargbo, the Director of Marketing and Driver Services for GHTC.[2]

The agreement between GHTC and Nikiema stated that it was an "Independent Contractor License and Vehicle Purchase Option Agreement." It granted Nikiema a license to operate GHTC's taxicab, obligating Nikiema to pay a set weekly fee to lease the taxicab and the specialized taxicab equipment installed in it. The agreement also established an independent-contractor relationship between GHTC and Nikiema. The agreement stated that GHTC "does not have the right to control the details of how [Nikiema] will acquire and transport Passengers

---

[2] Also included were Nikiema's City of Houston taxi license issued August 6, 2013, and records indicating that GHTC pulled Nikiema's driving records on August 1, 2013, December 16, 2013, and March 24, 2014.

under this Agreement, and that [GHTC] gives no instructions as to how, when, where, or even if the Licensee utilizes the Goods and Services or operates the Taxicab." Nikiema received his revenue from passengers. GHTC provided Nikiema with specified amounts of indemnification liability coverage, and it recommended he obtain additional insurance coverage. Under the terms of the agreement, GHTC was not obligated to provide driver training, but the agreement did provide, "Before [GHTC] is willing to execute this Agreement, [Nikiema] is encouraged to complete the Business Orientation Program provided by [GHTC.]" Under the agreement, Nikiema also granted GHTC the right to sell advertising on and in the taxicab and the right to collect all revenue from such advertisements, and in exchange he received a weekly lease rebate.

Kargbo's affidavit likewise stated that: Nikiema was an independent contractor; GHTC did not have the right to control the details of Nikiema's work or the right to control Nikiema in any manner; GHTC provided a computerized dispatch system, but Nikiema was not required to use it, and if he did use it, he was not required to accept the fare. Kargbo averred that the City of Houston passed ordinances that controlled Nikiema's performance of his duties as a taxicab operator, and GHTC did not control his work beyond what it was required to do under City ordinances.

The Perezes responded to GHTC's motion for summary judgment and asserted that the agreement relied upon by GHTC was "a mere sham or subterfuge designed to conceal the true legal status of the parties" and that extrinsic evidence provided "more than a scintilla of evidence" that GHTC had an actual right to control Nikiema. In support of its argument, they offered the depositions of Nikiema and Kargbo.

During his deposition, Nikiema testified that he entered into the independent contractor agreement with GHTC, but he was not provided with a copy of the contract to review before signing the agreement, and he was not given time to review its terms. GHTC instructed him where to sign or initial the contract and where not to. He considered GHTC to be his employer.

Nikiema testified that, as part of his agreement with GHTC, he paid a set weekly fee to lease the taxicab, and he had an option to purchase the vehicle at the end of the agreement. The taxicab was outfitted with specialized equipment, including a credit-card swiper, stool light, taxi meter, GPS system, and dispatch system. The equipment belonged to GHTC, and GHTC was responsible for the maintenance of the equipment, as well as maintenance and repairs on the vehicle. Nikiema testified that he was responsible for gas, tolls, any traffic tickets, and the cost of oil and transmission changes.

Nikiema further testified that, before contacting GHTC, he did not have a taxi license, nor did he have any experience driving a taxicab or operating any specialized equipment for taxicabs. He attended a course with GHTC over several days in which he received training on how to operate the specialized taxicab equipment. GHTC instructed him on how to deal with passengers, identified safety precautions to follow while driving, and provided him with study materials to prepare for the taxi license exam. Kargbo also testified during his deposition that Nikiema completed GHTC's business orientation program and a defensive driving course at GHTC.

In his deposition, Nikiema indicated that, although he was not required to use GHTC's dispatch system, he obtained all, or 99%, of his fares through the company's dispatch system, and he had no customers of his own. GHTC monitored the location of its vehicles, and it would send information about potential fares to drivers based on the driver's proximity to the passenger pick-up location. Nikiema acknowledged that he was free to accept or reject any potential fares generated through the GHTC dispatch system, but he understood that he was expected to accept fares and that it was his "duty" to do so. He stated that GHTC had penalized him on numerous occasions for rejecting fares. If he rejected a fare for an "important customer," or if there were no other available vehicles in the area, GHTC dispatch would call his mobile phone and order him to accept the fare.

When he rejected fares under those circumstances, the vehicle's computer system would be shut down and the stool light would deactivate. Nikiema testified that he determined his own shifts, but if the taximeter was off for two or three hours during the shift, GHTC would give him "downtime."

Nikiema testified in his deposition that he generally was entitled to keep all cash payments and all credit card payments, minus a processing fee, that he received from passengers. He was required to provide receipts to customers, and the receipts were branded with GHTC company information. When he accepted a METROLift account fare, however, he did not receive any payment from the passenger. Instead he would complete the trip and provide the ride information to GHTC, which would then pay him directly.

At the time the accident with Diane Perez occurred, Nikiema was on his way to pick up a METROLift account passenger who he had accepted through the GHTC dispatch system. He testified that he contacted GHTC dispatch immediately after the accident "seeking advice," as he had been trained by GHTC to do. GHTC contacted the police. Nikiema's testimony also established that he was prohibited from working for anyone but GHTC; GHTC had instructed Nikiema to take the shortest route to pick up and to drop off passengers; and this route was provided to him by the GPS device installed in the taxicab.

7

The trial court granted GHTC's no-evidence motion for summary judgment, but it did not rule on GHTC's traditional motion for summary judgment.

**Analysis**

On appeal, the Perezes argue in their sole issue that the trial court erred in granting GHTC's no-evidence motion for summary judgment because they presented evidence raising a fact question on GHTC's liability for negligence based on their respondeat superior claim. They assert that they presented "substantial evidence" that GHTC had the right of control of Nikiema's work and that the accident occurred in the course and scope of his employment with GHTC, making the company vicariously liable for his negligence.

**A.    Standard of Review**

After an adequate time for discovery has passed, a party may move for summary judgment on the ground that there is no evidence of one or more essential elements of a claim or defense on which the nonmovant would have the burden of proof at trial. TEX. R. CIV. P. 166a(i). The motion must state the elements as to which there is no evidence. TEX. R. CIV. P. 166a(i). The reviewing court must grant the motion unless the nonmovant produces summary-judgment evidence raising a genuine issue of material fact. *Id*.; *see Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006). If the nonmovant produces evidence "that would enable

reasonable and fair-minded jurors to differ in their conclusions," a genuine issue of material fact exists. *See Hamilton v. Wilson*, 249 S.W.3d 425, 426 (Tex. 2008).

A no-evidence motion for summary judgment is essentially a directed verdict granted before trial. *Mack Trucks*, 206 S.W.3d at 581–82. We apply the same legal sufficiency standard in reviewing a no-evidence summary judgment as we apply in reviewing a directed verdict. *See id.* at 582. Accordingly, we review the evidence in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts in the nonmovant's favor. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). Evidence that favors the movant's position will not be considered unless it is uncontroverted. *Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.*, 391 S.W.2d 41, 47 (Tex. 1965).

## B. No-Evidence Summary Judgment on Respondeat Superior

Under the doctrine of respondeat superior, an employer may be vicariously liable for the negligence of its employee who was acting within the scope of his employment, even though the employer has not personally committed a wrong. *St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 541–42 (Tex. 2002); *Wilson v. Davis*, 305 S.W.3d 57, 66–67 (Tex. App.—Houston [1st Dist.] 2009, no pet.). An entity that hires an independent contractor, however, is generally not vicariously liable for the

negligence of the independent contractor. *Baptist Mem'l Hosp. Sys. v. Sampson*, 969 S.W.2d 945, 947 (Tex. 1998).

### 1. Right of Control

Whether Nikiema is an employee or an independent contractor of GHTC turns on the question of GHTC's right to control Nikiema's work. Whether one is an independent contractor or an employee is measured by the amount of control the employer exerts, or has the right to exert, over the details of the work performed. *Newspapers, Inc. v. Love*, 380 S.W.2d 582, 591 (Tex. 1964).

When, as here, a contract establishes an independent-contractor relationship and does not grant control over the details of the work to the principal, evidence outside the contract must be produced to show that despite the contract terms, the true operating agreement vested the right of control in the principal. *Id.* at 592; *Farrell v. Greater Houston Transp. Co.*, 908 S.W.2d 1, 3 (Tex. App.—Houston [1st Dist.] 1995, writ denied). Absent extrinsic evidence indicating that the contract was a subterfuge or sham, that the hiring party exercised control in a manner inconsistent with the contract provisions, or that the contract has been modified by a subsequent express or implied agreement, the contract is determinative on the nature of the parties' relationship. *Love*, 380 S.W.2d at 592; *Weidner v. Sanchez*, 14 S.W.3d 353, 373 (Tex. App.—Houston [14th Dist.] 2000, no pet.). Evidence of "[s]poradic action directing the details of the work" or an "occasional assertion of

10

control" is not sufficient to override the contract. *Farrell*, 908 S.W.2d at 3. The assumption of an exercise of control must be "so persistent and the acquiescence therein so pronounced as to raise an inference that at the time of the act or omission giving rise to liability, the parties by implied consent and acquiescence had agreed that the principal might have the right to control the details of the work." *Love*, 380 S.W.2d at 592.

Courts measure the right to control by considering factors such as: (1) the independent nature of the worker's business; (2) the worker's obligation to furnish necessary tools, supplies, and materials to perform the job; (3) the worker's right to control the progress of the work except as to final results; (4) the time for which the worker is employed; and (5) the method of payment, whether by unit of time or by the job. *Limestone Prods. Distrib., Inc. v. McNamara*, 71 S.W.3d 308, 312 (Tex. 2002); *INA of Tex. v. Torres*, 808 S.W.2d 291, 293 (Tex. App.—Houston [1st Dist.] 1991, no writ). It is not required that all five factors be present to make a finding on the right to control. *Thompson v. Travelers Indem. Co. of R.I.*, 789 S.W.2d 277, 278 (Tex. 1990); *see McClure v. Greater San Antonio Transp. Co.*, SA-08-CA-112-FB, 2009 WL 10670178, at *9 (W.D. Tex. Mar. 24, 2009). That a "person is normally an independent contractor does not preclude a finding of agency as to the particular transaction at issue." *Weidner*, 14 S.W.3d at 373–74.

11

The Perezes argue that the trial court erred in granting summary judgment in favor of GHTC on the theory of respondeat superior because they presented "overwhelming" summary judgment evidence that, despite the terms of the agreement between GHTC and Nikiema, GHTC nevertheless exercised a level of control over Nikiema that indicated he was an employee rather than an independent contractor. They argued that this extrinsic evidence was sufficient to create a fact issue on their respondeat superior claim.

Examining the summary-judgment evidence on GHTC's right to control Nikiema's work, and hence his status as an independent contractor or employee, we agree with the Perezes that they produced evidence raising a genuine issue of material fact on their respondeat superior claim.

The first measure of the right to control, the independent nature of the worker's business, relates to who has the right to control the details and methods of the work. *White v. DR & PA Deliverance, Ltd.*, No. 01-12-00227-CV, 2014 WL 767218, at *5 (Tex. App.—Houston [1st Dist.] Feb. 25, 2014, no pet.) (citing *Limestone*, 71 S.W.3d at 312, and *Wolff*, 94 S.W.3d at 542). Uncontroverted summary-judgment evidence established that Nikiema generally controlled the days and hours he worked. However, in contradiction to the terms of the agreement and GHTC's assertions that Nikiema was not required to accept any fare if he chose to use their dispatch system, Nikiema testified that his dispatch system was

12

shut off when he refused certain rides, and he was given "downtime" when his taximeter was inactive for two or three hours during his shift. The Perezes also point to Nikiema's deposition testimony indicating that he did not have his own customers and that he relied entirely or almost entirely on GHTC's dispatch system for fares.

As to the second factor, the worker's obligation to furnish necessary tools, supplies, and materials to perform the job, the summary-judgment evidence established that GHTC owned the taxicab, including all of the specialized equipment installed in it, and Nikiema paid GHTC to lease these items. *See, e.g.*, *Tirres v. El Paso Sand Products, Inc.*, 808 S.W.2d 672, 674, 676 (Tex. App.—El Paso 1991, writ denied) (worker's agreement to use equipment furnished by principal was not evidence of right to control); *see also White*, 2014 WL 767218, at \*6 (although employer provided worker some materials, worker was obligated to pay for the materials, which supported conclusion he was independent contractor). Although the contract indicated that training was not included as part of the agreement, Nikiema testified GHTC trained him on how to operate the specialized taxicab equipment. It also instructed him on certain procedures and safety precautions and provided him with study materials to prepare for the taxi license exam.

Regarding the right to control the progress of Nikiema's work except as to final results, the Perezes contend that the evidence shows that GHTC, not Nikiema, controlled the progress of his work. They point to evidence that GHTC had control over the advertising and promotion of the cab operation, but the summary-judgment evidence established that Nikiema sold advertising rights of the cab to GHTC. Nikiema also testified in his deposition that GHTC had instructed him to take the shortest route to pick up and to drop off passengers and this route was provided to him by the GPS device that GHTC owned and had installed in the taxicab.

The Perezes also presented some evidence regarding the time that Nikiema was employed by GHTC. Perez testified that he considered GHTC his employer. Nikiema further testified that, before working for GHTC, he did not have a taxi license, nor did he have any experience driving a taxicab or operating any specialized equipment for taxicabs. He attended a training course with GHTC on how to operate the specialized taxicab equipment, and GHTC instructed him on how to deal with passengers, identified safety precautions to follow while driving, and provided him with study materials to prepare for the taxi license exam. Kargbo also testified during his deposition that Nikiema completed GHTC's business orientation program and a defensive driving course at GHTC. The evidence also established that Nikema first entered into an agreement with GHTC approximately

eleven months before the accident and that, at the time of the accident, the parties had entered into an agreement that would expire at the end of one year but could be cancelled at any time.

Finally, regarding the method of payment, it is undisputed that Nikiema was paid by the job, and for typical fares he was paid directly by his customers. However, Nikiema testified that he did not receive payment from customers for METRO Lift account fares, such as the one he had taken at the time of the accident in this case. According to his deposition testimony, he received compensation for these fares from GHTC directly. *See Weidner*, 14 S.W.3d at 374–75 (holding that fact that "[a] person is normally an independent contractor does not preclude a finding of agency as to the particular transaction at issue").

Viewing the evidence in the light most favorable to the Perezes, as we must, we conclude that they raised a material fact issue on their respondeat superior claim. Although GHTC presented evidence of the agreement between itself and Nikiema that expressly stated that Nikiema was an independent contractor, the Perezes presented evidence outside the contract from which a factfinder could determine that the true operating agreement vested the right of control in GHTC. *See Love*, 380 S.W.2d at 592, *Farrell*, 908 S.W.2d at 3. The evidence produced by the Perezes—namely, Nikiema's deposition testimony—constitutes some evidence that GHTC exercised control over Nikiema in a manner inconsistent with the

agreement's provisions or that the agreement had been modified by a subsequent implied agreement. *See Love*, 380 S.W.2d at 592, *Weidner*, 14 S.W.3d at 373.

GHTC asserts that its contract provided that Nikiema was an independent contractor and that the summary-judgment evidence presented by the Perezes failed to establish that GHTC took any actions beyond those required for compliance with ordinances of the City of Houston. GHTC argues that the facts of this case are akin to those presented to this court in *Farrell*, 908 S.W.2d 1. In *Farrell*, this court affirmed a summary judgment in favor of a cab company and held, as a matter of law, that a cab driver was an independent contractor.

Like Nikiema, the cab driver in *Farrell* had entered into an independent-contractor agreement with the cab company, Yellow Cab. *Id.* at 3. The summary-judgment evidence in that case established that: Yellow Cab provided a computerized dispatch system, but the driver was not required to use it, or to accept any fares if he did; the driver paid a fee to operate to Yellow Cab to be licensed under its cab operating permit and to use its radio and dispatch system; and the driver's total compensation came from payments by customers. *Id.* The summary-judgment evidence in *Farrell* also established that: Yellow Cab did not monitor how, where, or when the driver worked, and it did not know where or if he was operating his taxicab; the driver determined the route he took when delivering a customer; although the title to the cab listed Yellow Cab, the driver was listed as

the vehicle's "beneficial owner" and stated that the driver could have title assigned to him if the cab left the Yellow Cab fleet; the driver was responsible for all maintenance expenses on the cab; and the driver was covered under Yellow Cab's self-insurance certificate. *Id.* at 3–4.

*Farrell*, therefore, is distinguishable in several key ways. Here, GHTC presented evidence that it provided a dispatch system, but Nikiema was not required to use it. Nikiema presented contradictory testimony, asserting that he got all, or nearly all, of his fares through the dispatch system and that, despite the terms of the agreement, he was pressured by GHTC to take fares under certain circumstances. Nikiema also testified that, contrary to the terms of the agreement, GHTC required him to take the shortest routes when picking up and dropping off fares and that the route was set by the GPS device owned by GHTC and installed in the taxicab. He also testified that GHTC was aware of when his meter was running and would give him "downtime" when his taximeter was off for two or three hours during his shift. There is a further key difference between this case and *Farrell* in relation to the nature of Nikiema's business and GHTC's right to control his work. In *Farrell*, uncontradicted evidence showed that the driver controlled how, when, where, and if he worked. 908 S.W.2d at 4. Here, by contrast, Nikiema's testimony is some evidence that GHTC penalized him for rejecting fares

or for periods of inactivity during a shift. Although GHTC denies this activity, we conclude that this evidence raises a material question of fact on the right to control.

GHTC correctly notes that at least some of its supervision and direction of Nikiema's work was required for it to comply with City ordinances. *See* Hou. Ord. §§ 46-11(c) (requiring permittees of vehicles equipped with GPS to "collect, maintain, and provide to the director . . . all real-time tracking information . . . including . . . GPS location data, and whether or not the licensee is engaged with a passenger"); 46-18 (permittee required to submit written lease contract, certificate of title, and self-insurance); 46-114 (requiring driver to take the shortest route). The evidence nevertheless raises a fact question regarding whether GHTC's control over Nikiema's work rendered him an employee rather than an independent contractor. In addition to the evidence of things GHTC did to comply with City ordinances, there is at least some evidence that GHTC provided training and study materials to Nikiema and penalized him for rejecting fares or remaining idle during his shifts. Nikiema relied almost exclusively on GHTC's dispatch system at the time of the accident and, when he struck Diane's vehicle, he was on his way to pick up a METRO Lift fare for which he would be compensated directly by GHTC. *See McClure*, 2009 WL 10670178, at *15.

Viewing the evidence in the light most favorable to the Perezes, and construing all reasonable inferences and resolving any doubts in their favor, we

18

conclude that they produced evidence that would enable reasonable and fair-minded factfinders to conclude that GHTC exercised a right to control Nikiema's work such that he was an employee of GHTC at the time of the accident, and not an independent contractor. Thus, the trial court erred in granting GHTC's no-evidence motion for summary judgment on this element of their respondeat superior claim.

## 2. *Course and scope of employment*

Under the doctrine of respondeat superior, the plaintiff must establish not only that the negligent party was an employee but also that the employee was acting within the scope of his employment. *See Wolff*, 94 S.W.3d at 541–42. To establish that a party was acting within the scope of his employment, a plaintiff must show only that the act was: (1) within the general authority given to the employee; (2) in furtherance of the employer's business; and (3) for the accomplishment of the object for which the employee was employed. *Leadon v. Kimbrough Bros. Lumber Co.*, 484 S.W.2d 567, 569 (Tex. 1972); *Drooker v. Saeilo Motors*, 756 S.W.2d 394, 397 (Tex. App.—Houston [1st Dist.] 1988, writ denied).

It is uncontroverted that at the time of the accident, Nikiema was driving a taxicab owned by and permitted to GHTC. It is also uncontroverted that he was on his way to pick up a passenger for a METRO Lift account fare that he had received

19

and accepted through the GHTC dispatch system. Nikiema was following the route provided by GHTC's GPS device that it had installed in the taxicab, and, if he had completed the trip, GHTC would have been responsible for compensating him for the fare. Accordingly, the Perezes' summary-judgment evidence raises a genuine issue of material fact as to whether Nikiema was operating the taxicab within the course and scope of his alleged employment with GHTC at the time of the accident.

We conclude that the Perezes produced summary-judgment evidence raising a genuine issue of material fact as to whether GHTC actually exercised control over Nikiema's work at the time of the accident, such that he was acting as an employee and not an independent contractor, and whether Nikiema was acting within the scope of that alleged employment at the time of the accident. Accordingly, the trial court erred in granting GHTC's no-evidence motion for summary judgment on the Perezes' repondeat superior claim.

We sustain the Perezes' sole issue on appeal.

## Conclusion

We reverse the judgment of the trial court and remand the case to the trial court for further proceedings.

Richard Hightower
Justice

Panel consists of Justices Keyes, Goodman, and Hightower.